346 N.E.2d 634 (1976)
Forrest A. GEYER, Appellant,
v.
CITY OF LOGANSPORT et al., Appellees.
No. 2-374A70.
Court of Appeals of Indiana, Second District.
May 6, 1976.
*637 William E. Beck, II, C. Michael Cord, Bayliff, Harrigan, Cord & Maugans, Kokomo, for appellant.
Tom F. Hirschauer, Frank E. Tolbert, Miller, Tolbert, Hirschauer & Wildman, Logansport, for appellees.
SULLIVAN, Judge.
Plaintiff-appellant Forrest Geyer (Geyer) in this personal injury action appeals the dismissal of the City of Logansport (City) as a defendant and the granting of a motion for judgment on the evidence in favor of defendant James Jackson (Jackson).
On May 29, 1970, a bull escaped from the Stoney Pike Sale Barn, just south of Logansport. The bull was at large in Logansport for several hours, while members of the Logansport Police Department sought to capture it. During the chase, a decision was made to shoot the bull. Jackson, a lieutenant on the Logansport police force, obtained a high-powered Winchester rifle from police headquarters, found the bull, and fired two shots at it. One of the shots hit Geyer in the stomach causing serious injuries. Geyer subsequently filed suit against City, Jackson and Lester Murtha (Murtha), owner of the sale barn from which the bull escaped.

I. THE TRIAL COURT ERRED IN GRANTING JACKSON'S MOTION FOR JUDGMENT ON THE EVIDENCE
At the close of presentation of all the evidence at trial, Jackson moved for judgment on the evidence pursuant to Indiana Rules of Procedure TR. 50. The trial court sustained three of his five offered grounds for granting the motion, namely:
1. Geyer had failed to prove by a preponderance of the evidence that Jackson was negligent;
2. Ind. Ann. Stat. 18-2-2-1 (Burns Code Ed. 1974), which requires that a city be given notice within 60 days of an accident as a prerequisite to bringing a negligence action against the city, applied to Jackson since he was an employee of the city, and Geyer had failed to file timely notice;
3. A loan agreement executed between Geyer and Murtha was in actuality a full and complete release of Murtha, and hence all joint tort-feasors were released.
None of these constitutes proper grounds for a judgment on the evidence here, and the cause must be remanded for a new trial.

A. THE TRIAL COURT USED AN IMPROPER STANDARD FOR GRANTING A JUDGMENT ON THE EVIDENCE
TR. 50 (A) provides that "[w]here all or some of the issues in a case tried before a jury ... are not supported by sufficient evidence ... the court shall withdraw such issues from the jury and enter judgment thereon *638 ... ." In interpreting this rule, Indiana courts have held that a TR. 50 motion should be granted only if there is no evidence or reasonable inference to be drawn from the evidence in favor of the party opposing the motion on at least one essential element. The evidence must be without conflict and susceptible of only one inference, that being in favor of the moving party. The trial court must draw all rational inferences in favor of the party opposing the motion, and it may not substitute its judgment for that of the jury on questions of fact or grant the motion because the evidence preponderates in favor of the moving party. Miller v. Griesel (1974), Ind., 308 N.E.2d 701; Mamula v. Ford Motor Co. (2d Dist. 1971), 150 Ind. App. 179, 275 N.E.2d 849; Hendrickson & Sons Motor Co. v. Osha (1st Dist. 1975), Ind. App., 331 N.E.2d 743, 757; Adkins v. Elvard (1st Dist. 1973), Ind. App., 294 N.E.2d 160, 162. Appellate review is subject to the same standards, so this court must determine whether there was any evidence justifying submission of the case to the jury.
Reviewing the evidence to see if it is without conflict and susceptible of only one inference, that being that Jackson was not negligent, we find that it does not measure up to the stringent standard imposed by present Indiana law.
The bull escaped on a Saturday morning and was chased by members of the Logansport police department on foot and in cars and motorcycles through the streets and yards of Logansport. One officer who participated in the chase described it as "like a circus day". Dispatches went out over the police radios instructing that the bull be destroyed if necessary, but the source of those dispatches is disputed. The dispatcher identified Murtha as the source of the orders, but Murtha denied giving any such instructions.
Jackson, an experienced hunter and excellent marksman, picked up a high-powered 351 Winchester rifle at the police station, passing up a shotgun because he could not find ammunition for it. He found the bull at the intersection of Kloehne Street and Bartlett Avenue, near Geyer's home, where many people were gathered watching the chase. All the witnesses at trial agreed that Jackson fired two shots in rapid succession. One shot hit the bull in the horn and apparently ricocheted, and the other hit the bull in the neck but the bull was undaunted. The chase continued, ending eventually when the Sheriff got a horse and quietly led the bull out of town. Geyer, exiting from his house to walk downtown, was hit by one of the two shots fired by Jackson. None of the witnesses to the shooting who testified at trial could say which shot hit Geyer, although the Cass County Sheriff concluded from statements of two women who witnessed the incident that Geyer was hit by the first shot. Jackson said he saw Geyer between the two shots but did not know that he had been hit. Geyer only heard one shot. Geyer's and Jackson's versions of the incident are also in conflict. Geyer testified that no one gestured or told him to get out of the way or to get back. He saw Jackson raise his arms to fire, but saw no arm wave. He never turned around and walked back toward the house, even though he knew Jackson was going to shoot at the bull, for he was at a 90° angle to the line of fire and did not think there was any danger. Jackson, on the other hand, testified that he saw Geyer; that he yelled and waved his arms; and that Geyer looked up, stopped, and turned. He waved again because he did not think Geyer had gone back far enough, then fired, believing there was no risk to Geyer since he was then behind his home.
The County Sheriff testified that the hard-nosed shells used in the rifle have more of a ricocheting effect than softnosed shells, but Jackson said he was not aware of this difference.
The evidence is certainly not without conflict, as Jackson asserts, that he gave warning to Geyer. Jackson argues further *639 that the evidence is uncontradicted that Geyer was hit by the first bullet ricocheting from the bull's horn. This, he says, was an unforeseeable freak accident, and that he therefore can not be held liable for Geyer's injuries.
Indiana law has long recognized that foreseeability is an element in the determination of whether a duty exists. Southern Railway Co. v. Harpe (1944), 223 Ind. 124, 58 N.E.2d 346; Galbreath v. Engineering Construction Corp. (1971), 149 Ind. App. 347, 273 N.E.2d 121. A person must foresee and guard against what usually or is likely to happen, but need not necessarily anticipate that which is unlikely, or only remotely probable. Stayton v. Funkhouser (1970), 148 Ind. App. 75, 263 N.E.2d 764. The specific manner in which injury occurs or the extent of the harm need not be foreseen, however, for a person to held liable for his actions. If it can be reasonably anticipated that conduct will cause injury in substantially the manner in which it occurs, then the harm is considered to be the legal consequence of the actor's negligence. Tabor v. Continental Baking Company (1941), 110 Ind. App. 633, 38 N.E.2d 257; Daugherty v. Hunt (1941), 110 Ind. App. 264, 38 N.E.2d 250.
As support for his contention that he could not possibly foresee that Geyer would be hit by the bullets, Jackson points to testimony by Geyer that he "never figured it would ricochet like that," and to his own testimony that he did not see any possible way that Geyer could be hit.
Determination of what is reasonably foreseeable is not based on the subjective perceptions of the actors involved at the time, but rather is judged by the standard of the reasonably prudent person, who will make reasonable use of his faculties to discover dangers, and order his actions according to what appears likely in the known course of things. Parr v. McDade (2d Dist. 1974), Ind. App., 314 N.E.2d 768, 773; Stayton v. Funkhouser, supra. It was for the jury to decide whether Jackson acted reasonably under all the circumstances.

B. NOTICE REQUIREMENTS OF IND. ANN. STAT. 18-2-2-1 DO NOT APPLY TO INDIVIDUAL EMPLOYEES OF A CITY
Prior to 1974, before an action for negligence could be maintained against a municipal corporation, written notice had to be filed with specified municipal officers within 60 days of the occurrence giving rise to the claim. Indiana Ann. Stat. 18-2-2-1.[1] The trial court held that since this statutory notice was not filed with the City by Geyer within the 60-day period, the case should be dismissed as to Jackson, since he was acting as an agent or employee of the City.
We need not decide the merits of this determination (but see England v. City of Richmond (7th Cir.1969), 419 F.2d 1156) since we hold infra, Section II, that City had notice sufficient to satisfy the purpose of 18-2-2-1.
We note, however, that the Supreme Court has recently re-affirmed the principle that filing of the requisite notice is a procedural step necessary to bringing an action. If such notice has not been given, the city-defendant may resort to a TR. 12(B) defense to the action which must be stated in its pleadings in short and plain terms. Thompson v. City of Aurora (1975), Ind., 325 N.E.2d 839. Since Jackson made no specific pleading denial of filing of notice, the directed verdict on this ground was in error, regardless of the merits of the trial court's determination *640 that Jackson may benefit by the alleged lack of statutory notice to the City.

C. THE LOAN AGREEMENT EXECUTED BETWEEN GEYER AND MURTHA WAS NOT A FULL RELEASE WHICH WOULD HAVE THE EFFECT OF RELEASING ALL JOINT TORTFEASORS
Prior to commencement of the trial, Geyer and Murtha entered into a "Loan Agreement". Under the terms of that agreement, Murtha agreed to loan Geyer $10,000, repayable only if Geyer should receive a settlement or recovery over and above the costs of litigation and attorney's fees. The agreement set out terms of repayment, further providing that Geyer need not repay the loan or pursue an appeal if he were unsuccessful at trial. Murtha agreed to continue to participate diligently in the defense of the claim, but Geyer agreed not to execute against Murtha in the event judgment were awarded against Murtha, either individually or jointly with the other defendants.
Following the granting of Jackson's motion for judgment on the evidence, Geyer moved for a dismissal of the action as to Murtha without prejudice to the right to appeal as to Jackson and City, which motion was granted. Jackson argues that this agreement and dismissal constitute a release, the effect of which is to discharge all joint tortfeasors.
It is well settled that an unqualified full release of a claim as to one joint tortfeasor discharges all. Bedwell v. DeBolt (1943), 221 Ind. 600, 50 N.E.2d 875; Scott v. Krueger (1st Dist. 1972), 151 Ind. App. 479, 280 N.E.2d 336. It is equally well settled that a plaintiff may, without discharging other tortfeasors, choose to sue only one joint tortfeasor, or execute against only one, or obtain partial satisfaction from one in return for an agreement not to sue or not to execute. American Transport Co. v. Central Indiana Railway Co. (1970) 255 Ind. 319, 264 N.E.2d 64; Northern Indiana Public Service Company v. Otis (1969), 145 Ind. App. 159, 250 N.E.2d 378. The effect of a loan agreement limiting the liability of one joint tortfeasor was first considered in Northern Indiana Public Service Company v. Otis, supra, which approved the device as a permissible innovation on agreements not to sue or not to execute. A covenant not to execute in the form of a loan agreement was also found not to release joint tortfeasors in American Transport Co. v. Central Indiana Railway Co., supra, which approved loan agreements as a means of making funds immediately available to injured parties who might otherwise have to wait for years while waiting for their claim to be finally settled. In that case, judgment was awarded against both joint tortfeasors, and one dismissed its appeal in return for a loan agreement which contained a covenant not to execute against it.
Jackson correctly points out that the intention of the parties controls the determination of whether an agreement is in fact a full release of all claims regardless of the denomination of the instrument. Lows v. Warfield (1971), 149 Ind. App. 569, 274 N.E.2d 553; Landers v. McComb Window & Door Co. (1969), 145 Ind. App. 38, 248 N.E.2d 358. Jackson asserts that three aspects of the agreement reveal an intention to effectuate a full release: (1) the agreement admits that the defendants are jointly and severally liable; (2) a paragraph of the agreement recites that Murtha is willing to put the issues at rest with the object of reconciling differences and limiting his own liability; and (3) Geyer can never collect more than $10,000 from Murtha. He also finds Geyer's voluntary dismissal as to Murtha to be significant.
Jackson is incorrect in his assertion that Murtha admits joint and several liability with the other defendants. The agreement expressly denies any liability on Murtha's part, but recites that Murtha nonetheless recognizes that a judgment *641 could be awarded against all or each of the defendants. This is not an admission of joint and several liability.
The fact that Geyer cannot recover more than $10,000 has no significance in determining the nature of the agreement. While it is true that the plaintiff in Northern Indiana Public Service Co. v. Otis, supra, had the potential to collect more than the original loan amount from Northern Indiana Public Service Co., most other loan agreements and covenants not to sue or execute which have been considered and approved by the appellate courts involved a fixed and liability limiting sum of money. See American Transport Co. v. Central Indiana Railway Co., supra; Scott v. Krueger (1st Dist. 1972), 151 Ind. App. 479, 280 N.E.2d 336; Lows v. Warfield, supra. Nor does Murtha's willingness to put matters at rest and a desire to limit his own liability transform this agreement into a full release. The very purpose of covenants not to sue or not to execute and of loan agreements is to limit the defendant's liability.
We find no evidence which would dictate a conclusion that this agreement constituted a full release of claims by Geyer. It is a loan agreement with an agreement not to execute, and does not release joint tortfeasors.

II. THE CITY HAD ACTUAL NOTICE OF THE ACCIDENT WHICH INJURED GEYER
Geyer's complaint was dismissed as to the City because the trial court determined that he did not comply with Ind. Ann. Stat. 18-2-2-1, supra, which required an injured party to give notice to specified city officials within 60 days after the occurrence. Geyer admits that he did not file a timely formal notice but argues (1) that the City had actual notice within the 60-day period and therefore should not be dismissed as a defendant, and (2) that the 60-day notice requirement is unconstitutional. When this appeal was filed, City moved that it be dismissed as an appellee, alleging that as to it the appeal was not timely filed. City argued that Geyer should have immediately appealed the trial court's dismissal of City as a defendant. This argument was rejected by this court since at the time of that dismissal there was not yet a final appealable judgment, nor would there be such a judgment "until a judgment was entered disposing of the entire case as to all issues and all parties... ." Geyer v. City of Logansport (2d Dist. 1974), Ind. App., 317 N.E.2d 893, 896. A final judgment now having been entered which disposes of all issues as to all parties, Geyer's appeal of City's dismissal is properly considered.
The Cass County Sheriff's Department conducted an investigation of the incident immediately after its occurrence at City's instance and with City's knowledge and consent. The City's insurance carrier had correspondence with Geyer advising that the carrier had investigated the facts "immediately after they happened." Geyer argues that these investigations gave the City actual notice of the accident within 60 days of its occurrence and constituted substantial compliance with the statute.
The Supreme Court held in Aaron v. City of Tipton (1941), 218 Ind. 227, 32 N.E.2d 88, that the purpose of the notice statute is to inform city officials with reasonable certainty of the time, place, cause, and nature of the accident, and of the general nature of the injuries so that the city can investigate and prepare a defense or adjust a claim. Numerous cases have held, therefore, that when these purposes have been met, compliance with the statute will be found, even though there are irregularities in the form of the notice given. See Brown v. City of South Bend (1971), 148 Ind. App. 436, 267 N.E.2d 400, and cases summarized therein. In Galbreath v. City of Indianapolis (1970), 253 Ind. 472, 255 N.E.2d 225, for example, the Supreme Court found substantial compliance where *642 there was extensive correspondence with the city legal department concerning the accident within the 60-day period, but no notice given as required to the mayor or clerk.
The question before us now is whether there is substantial compliance when the purposes of the statute are met by actual knowledge of the accident on the part of the city, combined with an investigation of the accident conducted by or for the city. The Supreme Court held in 1911 that actual notice through detailed newspaper coverage of the accident was insufficient notice. Touhey v. City of Decatur (1911), 175 Ind. 98, 93 N.E. 540. The Court reached this result by reasoning that the liability of the city for negligence was statutory and that strict compliance with the statute was therefore necessary in order to bring an action. Aaron v. City of Tipton, supra, criticized this analysis, however, and held that the right to maintain an action for negligence against a city was a common law right. Based upon the Aaron holding, the Supreme Court has recently held that giving of notice is not necessary to confer jurisdiction upon a trial court, but as hereinbefore noted, is merely a procedural step necessary to bring an action. Thompson v. City of Aurora, supra. Thus the holding in Touhey v. City of Decatur, supra, that actual notice is insufficient has been seriously undermined by Thompson v. City of Aurora, supra, and can not be held determinative in light of the relaxation of the strict requirements of the notice statute in Galbreath v. City of Indianapolis, supra.
The City here conducted a full investigation through the sheriff and through its own insurance carrier immediately after the accident. The purposes of the statute have thus in fact been met. As the Supreme Court said in Galbreath v. City of Indianapolis, supra, "[t]he purpose of the notice statute being to advise the city of the accident so that it may promptly investigate the surrounding circumstances, we see no need to endorse a policy which renders the statute a trap for the unwary where such purpose has in fact been satisfied." (Original emphasis). 253 Ind. at 479-80, 255 N.E.2d at 229. Since there was substantial compliance with the purpose of the provisions of Ind. Ann. Stat. 18-2-2-1, supra, the trial court erred in dismissing the City as a defendant. Compare Batchelder v. Haxby (3d Dist. 1975), Ind. App., 337 N.E.2d 887.
Accordingly, we need not reach Geyer's argument that the statute is unconstitutional.[2]
The judgment of the trial court is reversed, and the cause remanded for a new trial as to defendants Jackson and City of Logansport.
BUCHANAN, P.J., concurs.
WHITE, J., concurs in result.
NOTES
[1] This section was repealed by Ind. Ann. Stat. 34-4-16.5-7, which substituted a 180-day notice requirement. The current statute requires notice of a "claim" as opposed to "the occurrence" which was the subject of the earlier statute. The older statute is controlling, however, since it was in effect at all times relevant to this case.
[2] An identical "equal protection" constitutional argument was recently rejected by the Third District. Batchelder v. Haxby (3d Dist. 1975), Ind. App., 337 N.E.2d 887.