Larry FETZ, As Natural and Legal
Guardian of Valerie M. Fetz, and
Individually, Plaintiffs,

v.

E & L TRUCK RENTAL CO.,
Defendant.

Cause No. IP 85–1831–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Sept. 8, 1987.

Lance D. Cline, Townsend Yosha Cline &
Price, Indianapolis, Ind., for plaintiffs.

Lloyd H. Milliken, Jr., Locke Reynolds
Boyd & Weisell, Indianapolis, Ind., for de-
fendant.

BARKER, District Judge.

### ENTRY

This matter is before the court on a
motion by the defendant E & L Truck
Rental Company for summary judgment.
The defendant argues that there is no gen-
uine issue as to any material fact and
claims entitlement to judgment as a matter
of law pursuant to Federal Rule of Civil

Procedure 56(c). Further, on the grounds that bifurcation would be conducive to judicial economy and would help avoid prejudice, the defendant moves the court to order separate trials on the issue of liability and damages pursuant to Federal Rule of Civil Procedure 42(b). Set forth below are the decisions and reasoning of the court on both counts.

## I. *Background*

On October 20, 1984, Valerie M. Fetz was driving east on Indiana State Road 38 when she was struck by a truck driven by Donald E. Arbuckle. As a result of the collision, Ms. Fetz has sustained tragic injuries that include brain damage so severe that she has been left in a permanent vegetative coma.

At the time of the collision Mr. Arbuckle was acting within the scope of his employment with Dallas & Mavis Forwarding Co., Inc. The tractor portion of the truck had been leased from E & L Truck Rental Company, a Michigan corporation engaged in the business of leasing tractors and trucks.

Following the accident Larry M. Fetz, the legal guardian of Ms. Fetz, filed suit on her behalf against Dallas & Mavis and Mr. Arbuckle in Hamilton County Superior Court. On January 6, 1986, the plaintiffs and defendants in that suit entered into a settlement agreement under which the plaintiffs would receive approximately 3.6 million dollars.

On December 30, 1985, the Fetzes brought suit in this court against E & L claiming that, as the owner and lessor of the tractor, E & L was responsible for the tractor's brakes and that the alleged failure of those brakes proximately caused Ms. Fetz's injuries. This court has jurisdiction over the action because of diversity of citizenship among the parties and because the amount in controversy is in excess of ten thousand dollars. *See* 28 U.S.C. § 1332.

E & L now moves for summary judgment. E & L argues that the settlement agreement reached earlier by the plaintiffs with Dallas & Mavis and Mr. Arbuckle is actually a *release*. It further argues that,

therefore, this action is barred as a matter of law under Indiana's long accepted rule that the release of one joint tortfeasor functions as the release of all joint tortfeasors. The plaintiffs counter that the settlement is nothing more than a loan receipt agreement that includes a covenant not to sue or execute—an agreement that does *not* release other tortfeasors under Indiana law. The parties do agree in principle, however, that if this court finds that the plaintiffs' prior settlement agreement was not a release, then most of the 3.6 million dollars received by the plaintiffs under that agreement would be an offset to this claim.

The defendant has also filed a motion requesting this court to exercise its discretion and order separate trials on the issues of liability and damages. The defendant urges that bifurcation will serve the interest of judicial economy. E & L also urges that bifurcation is necessary to eliminate the potential prejudice it feels "is inherent in actions such as these." Defendant's Motion for Separate Trials at 8. The plaintiffs respond by arguing that bifurcation in this case would only serve to lengthen trial time and that a unified trial would present no risk of undue prejudice to the defendant.

## II. *Discussion of the motion for summary judgment*

In Indiana it is a well-settled rule that the unqualified release of one joint tortfeasor acts to release all joint tortfeasors, despite language in the release that attempts to reserve a claim against one of the alleged tortfeasors. *Cooper v. Robert Hall Clothes, Inc.*, 271 Ind. 63, 390 N.E.2d 155 (1979). *See Geyer v. City of Logansport*, 346 N.E.2d 634, 640 (Ind.Ct. App.1976); *Flagg v. McCann Corp.*, 498 N.E.2d 76 (Ind.Ct.App.1986). It is equally well settled, however, that a plaintiff and a joint tortfeasor may enter into a covenant not to sue without releasing other tortfeasors. *See American Transport Co. v. Central Indiana Ry.*, 255 Ind. 319, 264 N.E.2d 64 (1970); *Geyer*, 346 N.E.2d at 640. The crucial question, of course, is whether an individual document will func-

tion as a "release" or as a "covenant not to sue." For this determination Indiana courts mandate that one look to the intent of the parties to the agreement regardless of the denomination of the instrument. *Lows v. Warfield,* 149 Ind.App. 569, 274 N.E.2d 553, 557 (1970) (per curium); *see Geyer,* 346 N.E.2d at 640; *Number One Beverage, Inc. v. Miller Brewing Co.,* 437 N.E.2d 508, 513 (Ind.Ct.App.1982). E & L now asserts that the settlement agreement the plaintiffs in this case entered into with Dallas & Mavis and Mr. Arbuckle was intended to function as an unqualified release and that, as a matter of law, it should therefore bar this action against alleged joint tortfeasor E & L. The plaintiffs counter that the settlement agreement was intended merely as a covenant not to sue and, as a result, should have no bearing on E & L's liability to the plaintiffs.

■ If the court were allowed to consider whether the settlement agreement of January 6, 1986, was intended by the signing parties as a release *of E & L,* the decision in this case would be unusually simple. The language of the settlement agreement expressly indicates that the par-

ties to that agreement intended to *preserve* the Fetzes' claim against E & L:

[I]t is specifically understood and agreed that Valerie M. Fetz and Larry M. Fetz do not intend to, nor do they, relinquish or give up their legal rights or claims against any other persons, firms, corporations or insurance companies not a party to this Agreement, *particularly against E & L Truck Rental Company.*

Plaintiff's Brief, Exhibit A at 4–5 (emphasis added). Furthermore, the fact that the Fetzes filed this case against E & L *before* signing their settlement agreement of January 6, 1986, only serves to emphasize the obvious conclusion that the parties to that agreement did not intend to thereby release E & L. This court, however, cannot give force to this self-evident intent. Indiana courts continue to cling to the rule that the release of one joint tortfeasor *necessarily* functions as a release of *all* joint tortfeasors *regardless* of the parties' manifest intention to preserve the victim's claim against other joint tortfeasors. *Cooper,* 390 N.E.2d at 157.[1] This is clearly the Indiana rule despite some understandable confusion in individual cases.[2] This court

1. There is little persuasive justification for this rule. Indeed, it stands in direct contrast to the modern rule that has been adopted by the vast majority of jurisdictions: "A valid release of one tortfeasor from liability for harm, given by the injured person, does not discharge others liable for the same harm, unless it is agreed that it will discharge them." Restatement (Second) of Torts § 885(1) (1979). In *Cooper,* the Indiana Supreme Court justified its express refusal to adopt section 885 by stating that the Indiana rule is based on a "concern that a plaintiff would be able to obtain a total recovery in excess of his actual injuries by successively obtaining settlements from the various tortfeasors in return for releases." *Cooper,* 390 N.E.2d at 157. Yet the majority rule easily avoids this problem by stating that "A payment by any person made in compensation of a claim for a harm for which others are liable as tortfeasors diminishes the claim against the tortfeasors, at least to the extent of the payment made, whether or not the person making the payment is liable to the injured person and whether or not it is so agreed at the time of payment...." Restatement (Second) of Torts § 885(3) (1979). Furthermore, a release rule such as that adhered to by the Indiana Supreme Court "might easily prove a boobytrap for the unwary." *Id.* at Comment d. This case, in fact, presents a prime

example of the unnecessary legal technicalities the Indiana release rule imposes on both the parties and the courts. It is indisputable that neither the Fetzes nor Dallas & Mavis and Mr. Arbuckle intended that their agreement release E & L. Yet the court must ignore this express intent and instead determine whether the parties "really" intended the agreement to function as a release for *Dallas & Mavis and Mr. Arbuckle.* If the court so finds, the Indiana release rule mandates that the intent of the parties *not* to release E & L must be thwarted.

2. *See, e.g., Lows v. Warfield,* 149 Ind.App. 569, 274 N.E.2d 553 (1970) (per curiam). In *Lows* one element the court considered in discerning "intent" was the fact that the plaintiff brought suit against the defendant "shortly after executing the Covenant Not to Sue" with the defendant's joint tortfeasor. *Lows,* 274 N.E.2d at 557. Yet under the Indiana release rule this fact should have been irrelevant. Immediately bringing suit against a joint tortfeasor *not* party to the agreement certainly tends to prove that the agreement was not intended to release *that* joint tortfeasor—but it says nothing about the only question the Indiana courts have declared important: whether the agreement was intended as a "release" for those joint tortfeasors that were *party* to the agreement.

must therefore disregard that evidence which the plaintiffs proffer to prove that their prior settlement agreement was not intended to release E & L.

The question before the court, then, is whether the settlement agreement of January 6, 1986, was intended to function as a release or as a covenant not to sue with respect to Dallas & Mavis and Mr. Arbuckle. E & L argues that, despite being labeled a "covenant not to execute" and a "loan agreement," the document was in fact a release of Dallas & Mavis and Mr. Arbuckle. E & L urges that this interpretation follows directly from the fact that in the settlement agreement Dallas & Mavis and Mr. Arbuckle admitted their liability to the plaintiffs. Leaving aside the question of whether an admission of liability would automatically indicate that the parties to the agreement intended to transform the document from a covenant not to sue into a release, it is not at all clear that Dallas & Mavis and Mr. Arbuckle *did* admit their liability to the plaintiffs. E & L points out that nowhere in the agreement did Dallas & Mavis and Mr. Arbuckle expressly deny liability. Defendant's Brief at 3. This is true enough but means little standing alone given that there is no requirement that a covenant not to sue contain a denial of liability. E & L also asserts, however, that at two points in the settlement agreement Dallas & Mavis and Mr. Arbuckle in fact expressly admitted their liability to the plaintiffs. E & L states:

> On page 1 of the Agreement it is expressly stated: "... Dallas & Mavis Forwarding Company, Inc. and Donald E. Arbuckle desire to limit their liability for the injuries sustained by Valerie M. Fetz *without shirking their responsibility to her and her family* ..." (emphasis added). This language clearly evidences an admission of fault.... This conclusion is reinforced by other language ... of the agreement ...: "... The conduct of E & L ... was *also* a proximate cause of the personal injuries sustained by Valerie M. Fetz;" (emphasis added). The clear implication is that the parties to the agreement agreed that the conduct of Arbuckle and Dallas & Mavis was a prox-

imate cause of the plaintiff's injuries. Otherwise, the word "also" appearing in the above quoted language would have no meaning.

Defendants' Brief at 3.

The first quoted passage from the settlement agreement is not properly seen as an admission of liability by Dallas & Mavis and Mr. Arbuckle. Rather, the passage merely recognizes that they *could* be held liable and expresses a legitimate desire to limit that potential liability. Clearly, such recognition of potential liability cannot serve to transform a document from a covenant not to sue into a release. It would seem to the court that virtually *every* covenant not to sue is premised on a recognition by the paying party that it has *some* potential liability to the victim. Otherwise the paying party would have little apparent motivation to deliver money to the victim. Indeed, Indiana courts have held that express recognition of potential liability within a loan agreement by the paying party is not an admission of joint and several liability. *See Geyer v. City of Logansport*, 346 N.E.2d 634, 640–41 (Ind.Ct.App.1976). Furthermore, the interpretation of the first quoted passage urged by the defendant would undeniably discourage the formation of loan agreements containing covenants not to sue. The Supreme Court of Indiana has recognized that such discouragement is not desirable: "The willingness of one joint tort-feasor to place a substantial sum of money at the disposal of the damaged party with a possibility of no recoupment is certainly to be encouraged." *American Transport Co. v. Central Indiana Ry.*, 255 Ind. 319, 264 N.E.2d 64, 67 (1970).

The second passage from the January 6, 1986, settlement agreement quoted by E & L is even less properly interpreted as an admission of liability by Dallas & Mavis and Mr. Arbuckle. The defendant urges that the word "also" can only be read as impliedly admitting that Dallas & Mavis and Mr. Arbuckle were proximate causes of Ms. Fetz's injuries. When the quoted phrase is read in context, however, a far more plausible interpretation is evident. The entire passage reads:

WHEREAS, an investigation on behalf of Larry M. Fetz indicates that E & L Truck Rental Company was negligent in placing in the stream of commerce a tractor with defective brakes, and that E & L Truck Rental Company will likely be held strictly liable for placing such a defective truck in the stream of commerce, and that the conduct of E & L Truck Rental Company was *also* a proximate cause of the personal injuries sustained by Valerie M. Fetz; ...

Plaintiffs' Brief, Exhibit A, at 1 (emphasis added). As the plaintiffs suggest, "[b]ecause the word 'also' appears in the final clause in a series of clauses which only describe the conduct of E & L ... its meaning in this paragraph of the settlement Agreement [appears to have been] intended by the parties to mean 'furthermore.'" Plaintiffs' Brief at 9. Read in context, this is clearly the most viable interpretation of the word "also." Its use certainly does not indicate the parties intended to imply that, in addition to the conduct of E & L, "the conduct of Arbuckle and Dallas & Mavis was a proximate cause of the plaintiff's injuries." Defendants' Brief at 3.

Because Dallas & Mavis and Mr. Arbuckle did not admit their liability to the plaintiffs in the January 6, 1986, settlement agreement, the defendant has presented this court with no persuasive proof that the parties to that agreement intended it to function as a release. By contrast, in their brief, the plaintiffs have demonstrated a number of factors that indicate the parties to the settlement agreement instead intended it to function as a loan agreement containing a covenant not to sue. For instance, it is clear that the purpose underlying the agreement was not to fully compensate the plaintiffs. *See* Plaintiffs' Brief, Exhibit A, at 2 (stating that "payments made under this Settlement Agreement are not intended as, nor understood to be, full compensation to Valerie M. Fetz and Larry M. Fetz...."). Most convincingly, however, it is obvious that the parties to the settlement agreement intended to leave open the question of liability for the plaintiffs' damages. The settlement agreement states:

[t]his Settlement Agreement is executed without reliance upon any statement or representation by Dallas & Mavis Forwarding Company, Inc. or Donald E. Arbuckle ... concerning the nature and extent of any damages, *liability therefor* or insurance coverages applicable ... [Mr. Fetz] is foregoing the right to have a court or jury determine questions of liability or damages as to any claims that he may have individually or as legal guardian of Valerie M. Fetz against Dallas & Mavis ... or Donald E. Arbuckle.

Plaintiffs' Brief, Exhibit A, at 2–3 (emphasis added). Such pointed avoidances of the question of liability would not be consistent with an intent to formulate a release of Dallas & Mavis and Mr. Arbuckle.

For all the foregoing reasons, the court finds that the intent of the parties to the settlement agreement of January 6, 1986, was fully consistent with the express phrase on page three of the agreement: "th[is] Agreement does *not* effect a release of the claims of Valerie M. Fetz and Larry M. Fetz...." Plaintiffs' Brief, Exhibit A, at 3 (emphasis added). The agreement was merely a loan agreement containing a covenant not to sue and therefore has no bearing on the plaintiffs' right to bring this lawsuit against E & L. As a result, the defendant's summary judgment motion must be denied.

### III. *Discussion of the motion for separate trials*

■ As defendants often do in personal injury cases to be tried before a jury, E & L has filed a motion requesting that the court order separate trials of the liability and damages issues pursuant to the discretionary authority granted the court under Federal Rule of Civil Procedure 42(b). Because this case involves a plaintiff suffering from catastrophic injuries and a corporate defendant, E & L argues that prejudice by a sympathetic jury is almost inevitable. *See* Defendant's Memorandum in Support of Motion for Separate Trials [Defendant's Memorandum] at 8. What makes E & L's motion and arguments less than

fully credible and persuasive, however, is that the *defendant itself* filed a demand for a jury trial in this case. *See* Defendant's Answer at 4.[3]

The defendant emphasizes two basic arguments in favor of bifurcating this trial. First, it urges that separate trials would serve the laudable goal of judicial economy. Yet, E & L presents nothing concrete to support this argument. Bifurcation will normally only shorten the total length of a trial if the defendant *prevails* on the question of liability and thereby renders a trial on damages unnecessary. The court has been shown nothing by E & L which would indicate that it is likely to prevail on the issue of liability. The defendant's numerous citations in support of increased use of bifurcation do not alter the fact that the norm for federal civil cases is still a unified trial of liability and damages. The burden must therefore be on the party seeking a bifurcated trial to indicate to the court that the theoretical benefits of bifurcation are likely to be realized in *this* particular case. E & L has not demonstrated that its probability of prevailing in a separate trial of liability is sufficiently substantial to warrant ordering a bifurcated trial in this case on the basis of "judicial economy."[4]

The defendant's second argument is that bifurcation is necessary to avoid jury prejudice against the defendant. The defendant argues that:

> [S]eparate trials would undoubtedly eliminate much of the potential prejudice that is inherent in actions such as these. It would be quite difficult and rare for a jury to make a rational decision on liability, which is the primary issue in this case, if evidence of damages is being offered at the same time.

Defendant's Memorandum at 8. Of course, as noted above, the defendant's sudden lack of faith in the jury system must be viewed with skepticism given that the defendants themselves demanded a jury trial in this case. *See* Defendant's Answer at 4. In any event, the court finds that there is no undue risk of prejudice in conducting this case as a unified trial. The court has confidence that counsel in this case will be able to maintain a clear distinction between liability issues and damages issues. Above all, this court has confidence in the ability of a jury to ably decide the separate question of liability in accordance with the court's instructions, even when presented with a sympathetic plaintiff.

## IV. *Conclusion*

Because the court finds that the January 6, 1986 settlement agreement reached by the plaintiffs with Dallas & Mavis and Mr. Arbuckle was not intended to, and did not release Dallas & Mavis and Mr. Arbuckle, the court now DENIES the summary judgment motion of E & L. Furthermore, because the court finds no likelihood of judicial economy in a bifurcated trial and no likelihood of undue prejudice in a unified trial, the court now DENIES the defendant's motion for separate trials.

---

**3.** The court considers the defendant's jury demand valid despite the fact that it made its demand by citing the *Indiana* Rules of Trial Procedure. Even in diversity cases, federal district courts follow the *Federal* Rules of Civil Procedure.

**4.** The court reaches this conclusion without taking into account the fact that the defendant has made a settlement offer to the plaintiffs. The plaintiffs' assertion that the defendant's offer to settle for $500,000 somehow reflects the defendant's recognition of the fact that "the Plaintiff will very likely obtain a verdict in its favor on liability," Plaintiffs' Memorandum at 2, is absolutely without merit. The policy reasons that forbid this court from considering settlement offers as proof of liability at trial, *see* Fed.R. Evid. 408, are equally applicable here: There are numerous legitimate reasons, both substantive and strategic, to explain why a defendant would make a settlement offer even though the defendant does not believe it is "very likely" the plaintiff will ultimately prevail. For instance, in this case the plaintiffs' complaint sought $17 million in damages. It would therefore make economic sense for the defendant to tender an offer of $500,000 even if it believed there was a mere *three percent* chance of the plaintiffs prevailing in full. Therefore, the court unequivocally rejects all of those arguments made by the plaintiffs that are based on the defendant's offer of settlement and admonishes plaintiffs that such assertions are grossly improper.