**Forester GRAY, Plaintiff,**

v.

**Gil CHACON, Meineke Discount Mufflers, Jartran, Inc., Truck & Trailer Rentals, Defendants.**

**No. IP 87–393–C.**

United States District Court, S.D. Indiana, Indianapolis Division.

May 6, 1988.

Larry R. Champion, Indianapolis, Ind., for plaintiff.

Phillip R. Scaletta, Ice Miller Donadio & Ryan, Indianapolis, Ind., for defendants Chacon and Meineke Discount.

Dennis M. Owens, Smith Maley & Douglas, Indianapolis, Ind., for defendant Jartran, Inc.

**ENTRY**

BARKER, District Judge.

Only recently this court was asked to consider Indiana's common law rules regarding the release of joint tortfeasors. At that time the court found that "Indiana courts continue to cling to the rule that the release of one joint tortfeasor necessarily functions as a release of all joint tortfeasors regardless of the parties' manifest intention to preserve the victim's claim against other joint tortfeasors." *Fetz v. E & L Truck Rental Co.,* 670 F.Supp. 261, 263 (S.D.Ind.1987) (emphasis omitted). With this case the court is asked to consider what impact the adoption of Indiana's Comparative Fault Act, Ind. Code §§ 34–4–33–1 to –14, might have had upon this antiquated rule. Because no Indiana state court has addressed this issue in a published opinion, this federal court is asked to determine as a matter of first impression how the highest court of Indiana would decide this issue if it were presented with the question. For the reasons set out below, this court finds that Indiana's Comparative Fault Act has undermined Indiana's judicially-created release rule and that, at least in those cases to which the Act is directly applicable, the release of one joint tortfeasor no longer functions as the release of all joint tortfeasors.

I. *Background*

The facts of this case are remarkably straightforward. On June 27, 1985, the defendants, Gil Chacon and Meineke Discount Mufflers, sold to Vittorio Bavuso a trailer hitch which the defendants also installed on Mr. Bavuso's automobile. Later that same day Mr. Bavuso rented from the third defendant, Jartran, Inc. Truck & Trailer Rentals, a trailer which was attached to Mr. Bavuso's vehicle by means of the newly installed trailer hitch. Two days

later, on June 29, 1985, Mr. Bavuso was driving his automobile in a westerly direction on I–465 in Marion County, Indiana. At that time the hitch came off of his automobile and, as a result, the trailer became lodged under the rear of his vehicle. Because of the manner in which the trailer came to a rest under his vehicle, Mr. Bavuso was unable to move his automobile and was forced to abandon both his vehicle and the rented trailer in a traveled lane of I–465.

The plaintiff in this action, Forester Gray, was unlucky enough to be driving his truck westbound on I–465 at about this time. Mr. Gray's truck collided with the rear of Mr. Bavuso's rented trailer while the trailer was still resting in a traveled lane of the highway. As a result of the accident Mr. Gray claims that he received serious injuries to his body and that he incurred substantial medical expenses, property damage, loss of income, pain and suffering, and permanent bodily injury.

Following the collision Mr. Gray brought suit against Mr. Bavuso. That claim was settled out of court. Mr. Gray received payment from Mr. Bavuso, in exchange for which Mr. Gray executed a release of all of his claims against Mr. Bavuso. *See* Brief in Support of Defendant Jartran, Inc.'s Motion for Summary Judgment [Defendant's Brief in Support], Exhibit A. The plaintiff admits that this document is in fact a release of Mr. Bavuso and does not now claim that it is a covenant not to sue or some type of loan receipt agreement. *See* Response to Defendant's Motion for Summary Judgment [Plaintiff's Response] at 2.

On April 14, 1988, Mr. Gray filed this federal diversity suit against the defendants Gil Chacon, Meineke, and Jartran. The plaintiff alleges that the defendants

Mr. Chacon and Meineke were negligent in the manufacturing, selling, and installing of Mr. Bavuso's trailer hitch. He further alleges, *inter alia*, that the defendant Jartran was negligent in failing to provide either Mr. Bavuso or the rented trailer with adequate warning lights, reflectors, or flares. Mr. Gray claims that all of his injuries were caused, either in whole or in part by these various acts of negligence.

All three defendants have now moved for summary judgment. The two-page argument made by the defendants [1] in support of their motion is admirably succinct: Mr. Gray executed a release of Mr. Bavuso and, in Indiana, the release of one joint tortfeasor necessarily functions as the release of all joint tortfeasors. *See* Defendants' Brief in Support at 1–2 (citing *Cooper v. Robert Hall Clothes, Inc.,* 271 Ind. 63, 390 N.E.2d 155 (1979)). The plaintiff counters by urging that the release rule reiterated in *Cooper* is inappropriate for cases arising under Indiana's Comparative Fault Act.[2] Mr. Gray correctly points out that every reported state court decision professing Indiana's continued adherence to that state's out-dated release rule involved a cause of action that arose prior to the Comparative Fault Act's effective date.[3] *See, e.g., Young v. Hoke,* 493 N.E.2d 1279 (Ind.Ct.App.1986); *Flagg v. McCann,* 498 N.E.2d 76 n. 1 (Ind.Ct.App.1986). The plaintiff further asserts that the primary motivation underlying Indiana's release rule was the fear that "if the release of one tortfeasor did not release all joint tortfeasors then an injured party could receive more than 100% of his damage and loss." Plaintiff's Response at 3. Because the Comparative Fault Act abolished joint and several liability and substituted a scheme

---

1. For ease of exposition the court will refer to arguments made in favor of summary judgment as if they were made by all three defendants collectively. Actually, the motion and its supporting arguments were made solely by Jartran. Mr. Chacon and Meineke simply joined in Jartran's previously filed motion.

2. The plaintiff also argues that Mr. Bavuso and the defendants in this case are not joint tortfeasors at all and that, therefore, Indiana's rule concerning the release of joint tortfeasors is not

applicable to this case. For the limited purposes of addressing the defendant's summary judgment motion, however, the court finds it unnecessary to address this factual question in light of the legal ruling the court makes below.

3. "This act does not apply to any civil action that accrues before the effective date of this act [January 1, 1985]." Ind. Code Ann. § 34–4–33–1 (Burns 1986).

of liability proportionate to fault, the plaintiff argues, the stated justification for Indiana's release rule is no longer valid. Therefore, the plaintiff concludes, the intervening legislative development of Indiana's Comparative Fault Act makes it clear that Indiana's highest court—if it were presented with the issue—would no longer apply the release rule most recently reiterated in *Cooper.* The defendants filed no reply.

## II. *The Role of This Court in Determining State Law*

Given that Indiana state law applies to this case, the first problem the court must address is the question of how this federal court should make the determination of what the applicable state law *is.* The deceptively simple formulation enunciated in *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), mandates that the federal court merely apply that state law "declared by [the state's] legislature in a statute or by its highest court." *Id.* at 78, 58 S.Ct. at 822. A difficulty arises, of course, when a change in state law is not patent in the language of legislation and has not yet been authoritatively announced by the state court. Such a situation raises the question of whether a federal court can properly *anticipate* such a change in state law. The answer to this question is clearly yes. *See, e.g., Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967) (declaring that "the State's highest court is the best authority on its own law. If there be no decision by that court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State. In this respect, it may be said to be, in effect, sitting as a state court.")

Even in those cases—such as the one at bar—wherein the matter to be addressed by the federal court has not been ruled on by *any* state court, the federal court must still endeavor to ascertain what the state law would be. "In the absence of a state court ruling, our duty is tolerably clear. It is to decide, not avoid, the question." *Daily v. Parker,* 152 F.2d 174, 177 (7th Cir.

1945) *quoted in* C. Wright, *Law of Federal Courts* § 58 at 375 (1983). Even then, however, the role of the federal court is carefully circumscribed:

> The federal court must keep in mind ... that its function is not to choose the rule that it would adopt for itself, if free to do so, but to choose the rule that it believes the state court, from all that is known about its methods of reaching decisions, is likely in the future to adopt.

C. Wright, *Law of Federal Courts* § 58 at 375 (1983). With these guidelines in mind, the court now proceeds to address the issues presented by the motion presently before the court.

## III. *Analysis*

### A. State Law Prior to the Comparative Fault Act

As noted earlier, it is well-settled that, prior to enactment of the Comparative Fault Act, the Indiana rule was that the release of one joint tortfeasor functioned as the release of all joint tortfeasors without regard to even the express intent of the parties to preserve the victim's claim against other tortfeasors. *See Cooper v. Robert Hall Clothes, Inc.,* 271 Ind. 63, 390 N.E.2d 155 (1979); *Bellew v. Byers,* 272 Ind. 37, 396 N.E.2d 335 (1979); *Geyer v. City of Logansport,* 346 N.E.2d 634 (Ind. Ct.App.1976) (citing *Bedwell v. DeBolt,* 221 Ind. 600, 50 N.E.2d 875 (1943); *Scott v. Krueger,* 151 Ind.App. 479, 280 N.E.2d 336 (1972)). Indiana courts continued to adhere to their release rule despite intense criticism. *See, e.g.,* Wigmore, *Release to One Joint–Tortfeasor,* 17 Ill.L.Rev. 563 (calling the rule a "surviving relic of the Cokian period of metaphysics") *quoted in Young v. Hoke,* 493 N.E.2d 1279, 1281 (Ind.Ct.App. 1986) (Garrard, J., dissenting); *Prosser & Keeton on Torts,* at 333 (5th ed.1984) (calling the rule "an antiquated survival of an arbitrary common law procedural concept, arising out of long forgotten semi-criminal forms of action"); *Fetz v. E & L Truck Rental Co.,* 670 F.Supp. 261, 263 n. 1 (S.D. Ind.1987) (finding that Indiana's traditional release rule had "little persuasive justification"). These criticisms were dismissed by the Indiana Supreme Court, however, as it

put forth two overlapping justifications for Indiana's release rule:

> The reasons for this rule are obvious. First, it prevents an unfair prejudice against the defendant by precluding the plaintiff from recovering in excess of his injuries by successively obtaining settlements from the various tort-feasors in return for releases. Second, joint tort-feasors "constitute, in a sense, one entity, each of them being jointly and severally liable for injury to the plaintiff." . . . .
> A release of one joint tort-feasor in effect releases the entire "entity." Accordingly, to release one is to release all of the others.

*Bellew v. Beyers*, 272 Ind. 37, 396 N.E.2d 335 (1979) (quoting *Cooper v. Robert Hall Clothes, Inc.*, 271 Ind. 63, 390 N.E.2d 155, 157 (1979)).[4] No reported Indiana state court decision, however, has yet addressed the question of whether this dual justification retains its vitality in light of Indiana's enactment of its Comparative Fault Act.[5]

### B. The Impact of the Comparative Fault Act Upon Indiana's Release Rule

Mr. Gray's fault-based cause of action against the defendants in this case accrued on June 27, 1985. Therefore, this diversity case clearly falls within the scope of Indiana's Comparative Fault Act. *See* Ind. Code § 34–4–33–1. Furthermore, Mr. Gray concedes that he executed a release of one of the defendants' alleged joint tortfeasors prior to this litigation. As a result, the defendants' motion for summary judgment puts the question squarely before this court: has the intervening legislative development of Indiana's Comparative Fault Act undermined Indiana's judicially-created release rule?

The essence of Indiana's Comparative Fault Act is contained in section 34–4–33–5 of the Act, for it is in that section that the Indiana legislature set out the prescribed method for distributing liability among multiple tortfeasors:

> The jury shall determine the percentage of fault of the claimant, of the defendants, and of any person who is a nonparty. . . . The jury next shall multiply the percentage of fault of each defendant by the amount of damages determined [previously by the jury] . . . and shall enter a verdict against each such defendant (and such other defendants as are liable with the defendant by reason of their relationship to such defendant) in the amount of the product of the multiplication of each defendant's percentage of fault times the amount of damages as [previously] determined. . . . In an action . . . that is tried by the court without a jury, the court shall make its award of damages according to the principles specified [above]. . . .

Ind. Code § 34–4–33–5(b)(4) & (c). The court finds that this language unquestionably undercuts both of the traditionally-stated rationalizations for Indiana's release rule.

First of all, section 34–4–33–5 obviously ends whatever risk there might have been that an injured party could receive more than 100% of her damages by successively

---

4. The Indiana courts also attempted to blunt criticism of the state's release rule by creating a number of exceptions designed to mitigate the rule's harshness. Thus, although the "release" of one joint tortfeasor acted to release all joint tortfeasors, a "covenant not to sue" or a "loan receipt agreement" with one joint tortfeasor would *not* release all joint tortfeasors. *See, e.g., American Transport Co. v. Central Indiana Ry.*, 255 Ind. 319, 264 N.E.2d 64 (1970); *Geyer v. City of Logansport*, 346 N.E.2d 634, 640 (Ind.Ct.App. 1976). The distinction between the rule and the exceptions, however, often involved litigants and courts in "unnecessary legal technicalities" that easily proved "a boobytrap for the unwary." *Fetz v. E & L Truck Rental Co.*, 670 F.Supp. 261, 263 n. 1 (S.D.Ind.1987) (citing *Restatement (Second) of Torts* § 885 (3), Comment d (1979)); *see*

*also, Young v. Hoke*, 493 N.E.2d 1279, 1283 (Ind.Ct.App.1986) (Garrard, J., dissenting) (labelling the distinction between the rule and its exceptions mere "hocus pocus" that pivoted around the trivial question of whether or not "the wrong magic word was used"). As a result, the various exceptions actually created more problems than they solved.

5. Indiana state courts have, of course, decided multiple tortfeasor cases in the time since the January 1, 1985, effective date of the Comparative Fault Act. As noted above, however, every such reported case involved a cause of action that arose *prior* to January 1, 1985. *See* text accompanying note 3, *supra*.

recovering from multiple tortfeasors. Because the Act requires the fact-finder to apportion the plaintiff's entire loss among the parties *and the nonparties* in a case, no party can be required to pay more money than her proportionate share of the plaintiff's total damages (as the amount of those total damages has been determined by the fact-finder). Furthermore, no rational defendant will have any incentive whatsoever to seek a release from the plaintiff by tendering a sum greater than that defendant would reasonably calculate as being her proportionate share of the plaintiff's total damages.

Secondly—and as a direct corollary to the court's first point—due to the Act's abolition of joint and several liability multiple tortfeasors can no longer be properly considered as "one entity" in Indiana.[6] The Indiana courts' argument that "[a] release of one joint tort-feasor in effect releases the entire 'entity' " is even less compelling than it might otherwise have been in light of the fact that defendants no longer risk having to pay one hundred percent of a plaintiff's damages. Because each defendant is liable *only* for her proportionate share of the plaintiff's harm—no more and no less—multiple defendants under the Act are far from being a single, monolithic "entity." Each defendant has a liability to the plaintiff that can be neither increased nor decreased by the relative amount of some other defendant's payment to the plaintiff. Therefore, far from being "one entity," joint defendants in Indiana are now as separate and independent from each other as they are from the plaintiff herself.

Because both justifications for Indiana's judicially-created release rule have been eliminated by the legislative enactment of the Comparative Fault Act, the judicially-created rule must be abandoned. This court has no difficulty in predicting that, when it is eventually presented with this question, the Indiana Supreme Court will decide the same way that this court does today. Not only is abandonment of the rule most consistent with the Act, it comports with the modern rule that has been recognized in the vast majority of jurisdictions. *See, e.g., Restatement (Second) of Torts* § 885(1) (1979). Furthermore, from all this court knows about the Indiana Supreme Court's methods of reaching decisions, it believes that, when presented the opportunity, that Court will abandon its traditional release rule and will adopt the far more enlightened and statutorily-compatible rule that the release of one joint tortfeasor does *not* release others liable for the same harm—*unless* it is expressly agreed that they shall be so released.[7]

### Conclusion

Because Indiana's common law release rule (that the release of one joint tortfeasor necessarily functions as the release of all joint tortfeasors) has been superseded by the enactment of Indiana's Comparative Fault Act, Mr. Gray's release of Mr. Bavuso does not, as a matter of law, function as a release of the defendants in this case.

---

6. The abolition of joint and several liability is patent in the language of section 34–4–33–5: by requiring the fact-finder to "enter a verdict" against each defendant in an amount equal to that defendant's proportionate liability (and thereby precluding the plaintiff's option of seeking recovery for the total amount of her damages from any one joint tortfeasor), the Act clearly eliminates the "joint" portion of joint and several liability. Although it is possible to fashion a "law professor's" argument in favor of the notion that the Act retained joint and several liability, *see, e.g.,* L. Wilkins, *The Indiana Comparative Fault Act at First (Lingering) Glance,* 17 Ind.L.Rev. 705–18 (1984), such an interpretation lacks persuasive force and is at odds with the legislative motivation otherwise evidenced throughout the Act.

7. The only intermediate appellate court in Indiana to have touched upon this question apparently agrees with this analysis. *See Young v. Hoke,* 493 N.E.2d 1279 (Ind.Ct.App.1986) (Staton, P.J., concurring; Garrard, J., dissenting) (two judges on a three-judge panel stating that, if the court had been presented with the question, they would have found that the Comparative Fault Act signaled the abandonment of Indiana's common law release rule). Furthermore, other states that have had release rules similar to Indiana's have found that the adoption of comparative fault acts have "shattered" the reasoning otherwise underlying their common law release rules. *See, e.g., id.* at 1280 (Staton, P.J., concurring) (discussing the impact of Kansas' Comparative Fault Act).

Therefore, the defendants' motion for summary judgment is hereby DENIED.