**Jay ZAMBRANA, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. HCR 91–243.**

United States District Court, N.D. Indiana, Hammond Division.

April 28, 1992.

Jay Zambrana, pro se.

Andrew B. Baker, Jr., Asst. U.S. Atty., Dyer, Ind., for respondent.

## ORDER

MOODY, District Judge.

This matter is before the court for resolution of the *pro se*, incarcerated defendant's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody." The government responded pursuant to the court's

order under Rule 4(b) of the § 2255 Rules, and the defendant replied.[1]

## I. BACKGROUND

This court has examined the record of trial proceedings. The defendant stands convicted after a bench trial before the Honorable Michael S. Kanne, late of this court and currently a Circuit Judge of the United States Court of Appeals for the Seventh Circuit. Judge Kanne found the defendant guilty on all counts that came to trial, including: one count of conspiracy to distribute cocaine, 21 U.S.C. § 846; two counts of aiding and abetting violations of the Travel Act, 18 U.S.C. §§ 2 & 1952; one count of possessing and aiding and abetting the possession of cocaine with intent to distribute, 18 U.S.C. § 2, 21 U.S.C. § 841(a)(1); and eighteen counts of using a telephone to further a drug conspiracy, 21 U.S.C. § 843(b). Judge Kanne subsequently sentenced the defendant to, *inter alia*, a term of imprisonment: ten years on count one for the drug conspiracy; five years on counts two and three for aiding and abetting violations of the Travel Act, to be served consecutive both to each other and to the conspiracy sentence; fifteen years on count four for possession with intent, to be served consecutive to the conspiracy and Travel Act sentences; and four years on the remaining telephone counts, to be served concurrent to each other and to the other sentences. The facts underlying the conviction are addressed in the Seventh Circuit's opinion on direct appeal:

> The thirty-two indictments [the unitary, sixty-one count indictment named thirty-two individual defendants] handed down against the members of this conspiracy were the result of months of investigation on the part of the United States Drug Enforcement Agency (the "DEA") into the activities of a suspected cocaine-distribution network in northern Indiana. The DEA coordinated their investigation with a number of local law enforcement agencies. Eventually, the investigation focused on the defendant-appellant Jesus Zambrana's family and his associates. Because the conspirators were in large part family members, undercover agents did not attempt to infiltrate the group. Instead, on the basis of information received from confidential informants, the government petitioned the district court to authorize the placement of an electronic surveillance wire tap on Jesus Zambrana's private telephone between March and July, 1985. Information received over this wire tap during the week prior to April 25, 1985, led law enforcement officers to believe that Ernest Lonzo and another unknown individual were transporting narcotics from Miami, Florida, to Jesus Zambrana's residence in Gary, Indiana. On the basis of this wire tap information, DEA agents, with the assistance of police officers from Lake County, Indiana, and East Chicago, Indiana, initiated the surveillance of Interstate Highway I–65 in the vicinity of Crown Point, Indiana, at approximately 8 p.m. on April 25, 1985. Before commencing the surveillance, a DEA agent met with Lake County, Indiana, police officers and provided them with a list of five individuals suspected as being involved in the transportation of narcotics between Florida and Indiana, as well as a list of four vehicles believed to be used by these suspects.

> At approximately 9 p.m. on April 25, during their surveillance of I–65 near the northbound ramp of Indiana Highway # 231, Lake County, Indiana, Police Officer Timothy Downs and DEA Special Agent Michael Ehrsam observed a rose-colored Oldsmobile Delta 88 traveling northbound on I–65, well below the speed limit, and floating from one lane to another. Because Officer Downs believed that the vehicle was being driven in an erratic manner, he followed the car for some four miles and pulled the driver over on suspicion of drunk driving.

> Following the stop of the Oldsmobile, the driver produced a driver's license

---

**1.** On reviewing the record, the court finds this motion appropriate for resolution without an evidentiary hearing or oral argument.

identifying him as Ernest Lonzo, whose name was referred to in the DEA's list of those suspected in the transportation of narcotics from Florida to Indiana. The passenger identified himself as Charles Cole, one of the defendants-appellants. After using Lonzo's driver's license for an I.D. check, Officer Downs arrested Lonzo for driving with a suspended license and conveyed Lonzo and Cole to the Lake County, Indiana, jail. Cole was released shortly thereafter.

After Lonzo's arrest, the Oldsmobile was transported to and impounded in the Lake County, Indiana, police garage. On the following day, April 26, 1985, DEA Special Agent Elaine Harris obtained a warrant from a United States magistrate in Hammond, Indiana, authorizing a search of the automobile. Later that day, she and East Chicago police officer Fernando Villicana proceeded to search the vehicle. During the search, Officer Villicana discovered a hidden compartment in the trunk of the car. The compartment contained six packages of cocaine with an estimated street value of $2,000,000, as well as $960 in cash....

Each of the defendants was tried separately on the various drug and wire fraud charges. The wire tap on Jesus Zambrana's telephone produced the bulk of the evidence introduced by the government to link the Zambranas (Jesus and his son Jay) and Charles Cole with the attempted delivery of the seized cocaine from Florida to Indiana. In each defendant's trial, the evidence against the defendants consisted primarily of approximately thirty of these tapes (two to three hours of a total three thousand six hundred hours during the time Zambrana's telephone was monitored), which contained conversations between Jay and Jesus Zambrana and several co-conspirators, including Ernest Lonzo. Although the word "cocaine" was never referred to in the telephone conversations, the government contended at trial that the cryptic language used in the conversations, combined with the context of the statements and other circumstantial evidence in the case, indicated that the

speakers were referring to Cole and Lonzo's planned delivery of cocaine to the Zambrana residence on April 25.

*United States v. Zambrana*, 841 F.2d 1320, 1323–25 (7th Cir.1988) (footnotes omitted).

In his direct appeal, the moving defendant challenged (1) "the legal sufficiency of the affidavits filed in support of the government's application for the court-authorized electronic surveillance," (2) "the procedure the trial court utilized in providing the jury with government-prepared, written transcripts of conversations between the various co-defendants translated from Spanish into English," and (3) the trial court's decision to admit "taped conversations between co-conspirators without requiring the government to offer substantial evidence independent of the statements themselves to link the defendant-appellants to the conspiracy." *Zambrana*, 841 F.2d at 1328–39, 1343–47. On March 7, 1988, the Seventh Circuit affirmed the conviction. *Id.* at 1347.

Reading the motion liberally, the defendant now presents two primary grounds for relief. He argues that his conviction is faulty because he had ineffective assistance of counsel at trial. He also argues that his sentence violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.

## II. ANALYSIS

█ Initially, the court notes two points. First, the court must endeavor to liberally construe the *pro se,* incarcerated defendant's filings. *See Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Second, the defendant has procedurally defaulted at least his second ground for relief by not raising it on direct appeal. *Norris v. United States,* 687 F.2d 899, 902–04 (7th Cir.1982). Unaccountably, however, the government's counsel has failed to raise and brief this procedural default, thus waiving the waiver. *E.g. Andrews v. United States,* 817 F.2d 1277, 1278 (7th Cir.1987), *cert. denied,* 484 U.S. 857, 108 S.Ct. 166, 98 L.Ed.2d 120 (1987) ("[W]e see no reason to depart from the time-honored tradition of considering only

those arguments presented to us."). Accordingly, the court proceeds to examine the defendant's arguments without requiring him to justify their prior treatment.

## A. Conviction

The defendant claims that he had ineffective assistance of trial counsel. Specifically, his first ground for relief states:

> Violation of Compulsory Process Clause of Sixth Amendment defendant's Right to present witnesses. Foster Harris, Robert Rosario and Lidya Martinez were material defense witness [sic]. The defense Attorneys' failure to call them gutted the defense. These witnesses could establish a factual basis to the defense theory to include the defendant, which gave them bargaining chips with the Government. The trial Attorneys' failure to call these witnesses pursuant to Rule 403 and 608(1) [sic] was an abuse of effective assistance of counsel.

The defendant appended affidavits from Harris, Rosario, and Martinez to his motion.

On the face of the one paragraph comprising the defendant's first ground for relief, he is apparently making an argument that his counsel was ineffective in not presenting character evidence under Federal Rule of Evidence 608. The defendant's reply brief in support of his motion, however, goes on to express arguments that his conviction rests on (1) illegal wire tap evidence, (2) constitutional discovery violations under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny, (3) improper influence of a prosecutor over a witness, and (4) bias of the same prosecutor. The defendant attached to his reply brief a new Rosario affidavit and an unsigned letter to himself.

█ To prevail on an ineffective assistance of counsel claim, the defendant must show both deficient representation and prejudice arising from the deficiency. The Seventh Circuit has provided comprehensive guidance on applying this standard for assessing ineffective assistance of counsel claims under § 2255:

The defendant bears a heavy burden in establishing an ineffective assistance of counsel claim. He must show (1) that the attorney's representation fell below an objective standard of reasonableness (performance prong), *Strickland v. Washington,* 466 U.S. 668, 688 [104 S.Ct. 2052, 2065, 80 L.Ed.2d 674] (1984), and (2) that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different (prejudice prong), *id.* at 694, 104 S.Ct. at 2068. *See also United States ex rel. Barnard v. Lane,* 819 F.2d 798, 802 (7th Cir.1987); *United States v. Hillsberg,* 812 F.2d 328, 336 (7th Cir.), *cert. denied,* 481 U.S. 1041 [107 S.Ct. 1981, 95 L.Ed.2d 821] (1987). With regard to the performance prong, the defendant must identify the specific acts or omissions of counsel that formed the basis for his claim of ineffective assistance. *Strickland,* 466 U.S. at 690 [104 S.Ct. at 2066]. The court "must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* The court's scrutiny of counsel's performance must be conducted with a high degree of deference and without the distorting effects of hindsight. *Id.* at 689 [104 S.Ct. at 2065]; *United States v. Sherwood,* 770 F.2d 650, 655 (7th Cir. 1985). As to the prejudice prong of the inquiry, a "reasonable probability" of a different result means a "probability sufficient to undermine confidence in the outcome (of the trial)." *Strickland,* 466 U.S. at 694 [104 S.Ct. at 2068].

*United States v. Delgado,* 936 F.2d 303, 310 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992) (quoting *United States v. Moya–Gomez,* 860 F.2d 706, 763–64 (7th Cir.1988), *cert. denied,* 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989)).

█ As for the claim that trial counsel was ineffective in not introducing character evidence reflected in the affidavits, the court is singularly unimpressed. Rosario and Harris state they never dealt in drugs with the defendant or his family; Martinez

says nothing relevant to this claim. This is essentially an effort by the defendant to present and argue new evidence. "As a general rule, newly discovered evidence that bears only on the question of guilt or innocence is not reviewable by a federal court on a motion for habeas corpus relief." *Coogan v. McCaughtry*, 958 F.2d 793, 801 (7th Cir.1992) (per curiam, adopting district court opinion); *see also Townsend v. Sain*, 372 U.S. 293, 317, 83 S.Ct. 745, 759, 9 L.Ed.2d 770 (1963) ("evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus"). This court concludes that the general rule applies in this instance. And, even assuming the Rosario and Harris evidence were deemed relevant and credible after a hearing, it could not affect Judge Kanne's determination of this defendant's factual guilt. Looking to the prejudice prong of *Strickland*, the court concludes that the overwhelming evidence showed this defendant's guilt beyond a reasonable doubt at trial. Nothing in the evidence proffered in these proceedings could have called that conclusion into question as a matter of fact.

The reply brief, however, puts a different spin on the information in the affidavits. The reply brief casts the proffered evidence as bearing on the legality of the wire taps, which produced damaging evidence at trial. Specifically, the defendant argues that the government used false information to obtain judicial authorization to conduct the wiretaps. The affidavits of Rosario and Harris are apparently meant to show as much.

■ Initially, the court notes that it need not reach this argument. Reply briefs are an improper vehicle for presenting new arguments, and should be confined to the issues raised in the opening motion or brief. *See, e.g., Wilson v. Giesen*, 956 F.2d

738, 741 (7th Cir.1992) (*pro se* prisoner waived argument on appeal by failing to raise it until reply); *see also United States ex rel. Majewski v. Mizell*, 1990 WL 103580, *2 (N.D.Ill., June 28, 1990) (No. 89 C 9319) (applying Illinois reply brief waiver rule to *pro se* habeas petitioner). Further, the court's form motion under § 2255 expressly and clearly warns movants to state all their grounds for relief at ¶ 12 of the form: "CAUTION: If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date." The defendant ignored this warning, and the court concludes that, even under *Haines*, he has done so at his peril and to his loss. Even *pro se* litigants are held to minimal standards of pleading and motion practice, and in framing their grounds for § 2255 relief it is well for them to remember what the Seventh Circuit has said on the subject of hidden arguments: "Judges are not like pigs, hunting for truffles buried in briefs." *Hanrahan v. Thieret*, 933 F.2d 1328 (7th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 446, 116 L.Ed.2d 464 (1991) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) (per curiam)).

■ Alternatively, the court holds that this argument is unavailing on its merits. As the Seventh Circuit explained over a decade ago, the issue is not cognizable in these proceedings. *Hussong v. Warden, Wisconsin State Reformatory*, 623 F.2d 1185, 1190–91 (7th Cir.1980) (state prisoner under 28 U.S.C. § 2254).[2] The statutory wire tap exclusionary rule of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2515, unlike the general Fourth Amendment exclusionary rule, may usually be raised in habeas proceedings. *Hussong*, 623 F.2d at 1188–91. *See also Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (holding Fourth Amendment exclusionary rule violations not cognizable un-

**2.** It is well settled that § 2254 and § 2255 are essentially co-extensive. *Lowe v. United States,* 923 F.2d 528, 529 (7th Cir.1991), *cert. denied,* — U.S. —, 111 S.Ct. 2066, 114 L.Ed.2d 471 (1991) (Section 2255 was intended to "af-

ford federal prisoners a remedy identical in scope to federal habeas corpus") (quoting *Davis v. United States,* 417 U.S. 333, 343, 94 S.Ct. 2298, 2304, 41 L.Ed.2d 109 (1974)).

der 28 U.S.C. § 2254). However, where the defendant has had an adequate opportunity to raise the issue in the original proceedings—and this defendant certainly litigated the admissibility of the wire tap evidence on direct appeal—it may only be raised to show that the conviction represents "a complete miscarriage of justice." *Hussong*, 623 F.2d at 1186, 1191. Where, as here, a federal habeas court can find "nothing in the record to indicate that [the defendant] is not guilty of the crime for which he is convicted," *id.*, then there is no such miscarriage of justice.[3] *See also Jacks v. Duckworth*, 651 F.2d 480 (7th Cir.1981), *cert. denied*, 454 U.S. 1147, 102 S.Ct. 1010, 71 L.Ed.2d 300 (1982).

■ The defendant's *Brady* claim would also be unavailing on the merits. The court construes the *Brady* claim stated in the defendant's reply brief as just another route to attack the validity of the wire taps. This is the only apparent construction that might satisfy the prejudice prong of *Strickland*. Perhaps there is something to this, insofar as it might, pushing *Haines* to the limit, be read to assert that the defendant had no adequate opportunity to litigate the validity of the wire taps in the original proceedings due to government misconduct. But nothing in the record of these proceedings or in the record of the original action leads to any inference that the government both (1) had the information proffered by affidavit, and (2) refused to disclose it as exculpatory material. Neither the defendant's raw allegations to this effect, nor anything in the affidavits, warrant any relief or any further proceedings under § 2255. *See Aleman v. United States*, 878 F.2d 1009, 1011–12 (7th Cir. 1989). And even if the defendant had presented information justifying such an inference, there is, again, no showing of prejudice such that this court would question the admissibility of the wire tap evidence or the outcome of the trial.

As for the remaining arguments concerning the alleged bias of an Assistant United States Attorney and his supposed influence over a witness, the court will waste no time with the merits. These arguments are frivolous on their face under the prejudice prong of *Strickland*.

### B. Sentence

The defendant argues that his sentence is unconstitutional. Specifically, he states as his second ground for relief:

> Consecutive sentences were improperly imposed one [sic] offenses in count (1) and (4); counts (2) and (3). Separate sentences for the offenses alleged in said indictment from one source to one destination, on the same day, was multiple punishment in violation of the Double Jeopardy Clause of the United States Constitution.

The Double Jeopardy Clause states: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The Supreme Court has explained that this provision has three functions: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)).

Reading the defendant's second ground for relief liberally under *Haines*, the court concludes that it raises or at least suggests two notable arguments invoking the third function of the Double Jeopardy Clause. First, the defendant argues that the United States may not punish him for both a drug

---

**3.** This court doubts that the *Hussong* court's analysis of Congressional intent, which led it to distinguish *Powell*, will ever be of real use to a defendant challenging illegal wire taps in habeas proceedings. The *Hussong* court noted that wire tap evidence tends to be especially probative and reliable, relying on the evidence at issue in concluding the conviction before it had worked no miscarriage of justice. 623 F.2d at 1191. In a classic Catch–22, if illegal wire tap evidence will almost inevitably refute a miscarriage of justice argument, then there will almost inevitably be no habeas relief for the § 2515 violations that produce it.

conspiracy, *and* aiding and abetting.[4] Second, the defendant argues that the United States may not punish him for both aiding and abetting interstate travel to pick up drugs in Florida, *and* aiding and abetting interstate travel back from Florida to distribute the same drugs.

 To the extent that the defendant argues generally that the Double Jeopardy Clause prohibits consecutive sentences for substantive offenses and conspiracy to commit those substantive offenses, his argument is unavailing. The Supreme Court explained as much in detail less than a month ago. *United States v. Felix,* —— U.S. ——, ——–——, 112 S.Ct. 1377, 1382–85, 118 L.Ed.2d 25 (1992) (limiting *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990)); *see also United States v. Somers,* 950 F.2d 1279, 1282–83 (7th Cir.1991). Further, the Double Jeopardy Clause is not offended by consecutive sentences for conspiracy and for aiding and abetting pursuant to that conspiracy. *E.g. United States v. Sidener,* 876 F.2d 1334, 1336–37 (7th Cir.1989) ("Conspiracy and aiding and abetting require proof of a fact not common to each and are separate punishable offenses."); *United States v. Gargano,* 1992 WL 22225, at *2 (N.D.Ill., Jan 23, 1992) (No. 85 CR 342) (same in drug case).

The defendant's first argument, however, implicates Wharton's Rule, and is not readily disposed of through straightforward double jeopardy analysis. The Seventh Circuit has recently and concisely addressed the effect of this rule:

> Wharton's rule is an exception to the general rule that a conspiracy and the completed substantive offense are separate crimes and may be punished by separate sentences. Defendants convicted of crimes to which Wharton's rule applies may not be punished for both the conspiracy and the completed substantive offense. *Iannelli v. United States,* 420

U.S. 770, 777–80 [95 S.Ct. 1284, 1289–91, 43 L.Ed.2d 616] (1975). However, "Wharton's rule applies only to offenses that require concerted criminal activity, a plurality of criminal agents." *Id.* at 786 [95 S.Ct. at 1293].

*United States v. Morris,* 957 F.2d 1391, 1403 (7th Cir.1992). In *Iannelli,* the Supreme Court provided a comprehensive study of Wharton's Rule, its history, and its application to federal criminal law. The Court noted a modern version of Francis Wharton's treatise, which states, "An agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission." *Iannelli,* 420 U.S. at 773 n. 5, 95 S.Ct. at 1288 n. 5 (quoting 1 R. ANDERSON, WHARTON'S CRIMINAL LAW AND PROCEDURE § 89, p. 191 (1957)). The Court identified the rule's "major underlying premise to be that agreements to commit crimes to which it applies do not seem to present the distinct dangers that the law of conspiracy seeks to avert." *Iannelli,* 420 U.S. at 783 n. 16, 95 S.Ct. at 1297 n. 16.

The *Iannelli* Court did much to clarify the role of Wharton's Rule in federal criminal law. It held that its "prior decisions indicate that the broadly formulated Wharton's Rule does not rest on principles of double jeopardy, [but] it has current vitality only as a judicial presumption, to be applied in the absence of legislative intent to the contrary." *Iannelli,* 420 U.S. at 782, 95 S.Ct. at 1292 (footnote omitted). In other words, "as the Rule is essentially an aid to the determination of legislative intent, it must defer to a discernible legislative judgment." *Id.* at 786, 95 S.Ct. at 1294.

Professors LaFave and Scott have noted, "The classic [Wharton's Rule] cases are dueling, bigamy, adultery, and incest, to

---

**4.** The motion, read narrowly on this point, would seem to focus only on count four, which charges aiding possession with intent to distribute cocaine. The court notes, however, that (gratuitously under § 846) the conspiracy count describes overt acts in furtherance of the conspiracy. These include aiding both the Travel Act and the possession with intent violations at issue. Applying *Haines,* therefore, the court analyzes the argument with reference to all of the aiding and abetting counts.

which may be added such other offenses as pandering, gambling, the buying and selling of contraband goods, and the giving and receiving of bribes." LaFAVE & SCOTT, 2 SUBSTANTIVE CRIMINAL LAW § 6.5(g)(4) at 119 (1986) (footnotes omitted); *see also Iannelli*, 420 U.S. at 782, 95 S.Ct. at 1292. Further, the Eighth Circuit has held:

> [T]he crimes to which Wharton's Rule classically applied have three general characteristics: (1) general congruence of the agreement and the substantive offense; (2) the parties to the agreement are the only ones who commit the substantive offenses; and (3) the consequences of the substantive crime rest on the parties rather than society while the conspiracy does not pose the threats to society that the law of conspiracy seeks to avoid.

*United States v. Cerone*, 830 F.2d 938, 944–46 (8th Cir.1987), *cert. denied*, 486 U.S. 1006, 108 S.Ct. 1730, 100 L.Ed.2d 194 (1988) (citing *Iannelli*, 420 U.S. at 782–83, 95 S.Ct. at 1292–93). In this case, the defendant is sentenced to consecutive terms in prison for conspiracy (count one) and for aiding and abetting pursuant to the conspiracy (counts two, three, and four). Aiding and abetting almost inevitably, though not necessarily, involves concerted criminal activity.[5] One may well wonder, therefore, whether it should not, like the classic cases, be taken to merge with conspiracy under Wharton's Rule as applied to interpret the intent of Congress.

There is persuasive precedent directly on point, though neither the defendant nor—far less understandably—the government bother to cite or discuss it. In *Cerone*, the Eighth Circuit rejected the very same Wharton's Rule argument with reference to aiding and abetting a Travel Act violation. Generally, held the *Cerone* court, aiding and abetting is distinct from the classic cases: "[A]greement remains the essential element of (conspiracy) crime, and serves to distinguish conspiracy from aiding and abetting which, although often

based on agreement does not require proof of that fact." *Id.* at 945 (citing and paraphrasing *Iannelli*, 420 U.S. at 777 n. 10, 95 S.Ct. at 1290 n. 10.). As the Supreme Court had held long before *Iannelli* and *Cerone*: "Aiding, abetting, and counseling are not terms which presuppose the existence of an agreement. Those terms have a broader application, making the defendant a principal when he consciously shares in a criminal act, regardless of the existence of a conspiracy." *Pereira v. United States*, 347 U.S. 1, 11, 74 S.Ct. 358, 364, 98 L.Ed. 435 (1954) (cited in *Iannelli*, 420 U.S. at 777 n. 10, 95 S.Ct. at 7290 n. 10). *See also United States v. Castro*, 887 F.2d 988, 996 (9th Cir.1989) ("Aiding and abetting does not require an agreement between two parties, a necessary prerequisite for a conspiracy conviction."); *United States v. Brown*, 521 F.Supp. 511, 519–20 (W.D.Wis.1981) (Crabb, C.J., adopting report and recommendations of magistrate) ("The presence of a § 2 allegation does not transform [18 U.S.C.] § 1001 into an offense requiring multiple actors."). *Cf. Somers*, 950 F.2d at 1282–83 (case involved aiding and abetting § 841(a)(1)).

Given that an aiding and abetting offense without a concurrent conspiratorial agreement is unlikely and awkward to imagine, however, it is not surprising that the *Cerone* court went further than this general holding. The court was ultimately "troubled by the multiple sentences ... which, in essence, stemmed from the same activities," 830 F.2d at 946 n. 8, and it went on to apply Wharton's Rule by, *inter alia*, examining the express Congressional intent behind the Travel Act:

> Most importantly, the legislative history underlying the Travel Act indicates that Congress did not intend conspiracy to merge with aiding and abetting a Travel Act offense. The Travel Act was enacted to provide federal assistance in the prosecution of organized crime. H.R.REP. No. 966, 87th Cong., 1st Sess. 2 (1961), *reprinted in* 1961 U.S.C.C.A.N.

---

**5.** With some creativity, one may imagine an unlikely defendant who has gained knowledge of a crime in progress and decided to assist its commission without the principal's knowledge—perhaps to help a loved one.

2664, 2665. Congress specifically intended that the Travel Act be prosecuted in conjunction with the aiding and abetting statute so that those who directed others to carry out their illegal missions could be prosecuted. H.R.REP. No. 966, 87th Cong., 1st Sess. 3 (1961), *reprinted in* 1961 U.S.C.C.A.N. 2664, 2666. In addition, conspiracy was proposed as an element of section 1952, but was rejected. 107 CONG.REC. 13, 943 (1961). Accordingly, we believe Congress intended that aiding and abetting a Travel Act offense be a separate offense from conspiracy, and double jeopardy principles are not violated by a prosecution for both offenses.

*Cerone*, 830 F.2d at 946. In *United States v. Sammons*, 918 F.2d 592 (6th Cir.1990), the Sixth Circuit joined the Eighth Circuit in considering and rejecting the very same Wharton's Rule argument with reference to aiding and abetting Travel Act violations in a "scheme to import marijuana into the United States." *Id.* at 595, 604–05. This court agrees with the *Cerone* analysis, and holds that Congress never intended that a § 846 drug conspiracy should merge with § 2 aiding and abetting of § 1952 Travel Act violations.

As for aiding and abetting the possession with intent to distribute cocaine, the same general argument against applying Wharton's Rule to aiding and abetting applies. Moreover, at least two courts have specifically considered and rejected the application of Wharton's Rule in this context. *United States v. Bommarito*, 524 F.2d 140 (2nd Cir.1975); *United States v. Collins*, 779 F.2d 1520, 1527–28 (11th Cir.1986). The *Bommarito* court, like the *Cerone* court, turned to the legislative history in upholding convictions for both a § 846 drug conspiracy and § 2 aiding and abetting of § 841(a)(1) possession with intent:

Section 406 of the Act, 21 U.S.C. § 846, supplements the general federal conspiracy statute, and makes it a crime to conspire "to commit *any* offense defined in this subchapter." (Emphasis added). The all-inclusive language of § 846 is not accidental but rather is consistent with the Act's overall aim of strengthening remedies available against organized traffic in drugs while lessening penalties for possession of drugs for personal use. *See* H.R.REP. 91–1444, 91st Cong., 2d Sess., pt. 1, at 10–11 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4566. Allowing prosecution for conspiracy under § 846 without the limitations imposed by Wharton's Rule is warranted by the Act's expressed purposes of "providing more effective means for law enforcement aspects of drug abuse prevention and control" and "providing for an overall balanced scheme of criminal penalties for offenses involving drugs." *Id.* at 1, 1970 U.S.C.C.A.N. 4566, 4567. In view of Congress' obvious concern with the dangers posed by organized schemes to distribute drugs, and the careful consideration it gave to the Act's scheme of penalties, we believe that if it had intended to restrict the scope of § 846 through the application of Wharton's Rule, it would have done so explicitly.

*Bommarito*, 524 F.2d at 144. *Bommarito* is on point and, in this court's opinion, correct. Congress never intended that a § 846 drug conspiracy should merge with § 2 aiding and abetting of § 841(a)(1) possession with intent.

Moreover, even if this analysis of express Congressional intent were not determinative, Wharton's Rule cannot apply to the specific facts and offenses in this case for at least two further reasons. First, there is an established "third party" exception to Wharton's Rule where the conspiracy involves more members than are necessary for the substantive offense at issue.

An exception to the Rule generally is thought to apply in the case in which the conspiracy involves more persons than are required for commission of the substantive offense. For example, while the two persons who commit adultery cannot normally be prosecuted both for that offense and for conspiracy to commit it, the third-party exception would permit the conspiracy charge where a 'matchmaker'—the third party—had conspired with the principals to encourage commission of the substantive offense. The ra-

tionale supporting this exception appears to be that the addition of a third party enhances the dangers presented by the crime. Thus, it is thought that the legislature would not have intended to preclude punishment for a combination of greater dimension than that required to commit the substantive offense.

*Iannelli,* 420 U.S. at 782 n. 15, 95 S.Ct. at 1292 n. 15 (dictum; citations omitted). *See also, United States v. Khatib,* 706 F.2d 213, 218 (7th Cir.1983) (applying third party exception to illegal receipt and possession of weapons); *United States v. Spitler,* 800 F.2d 1267, 1276 n. 5 (4th Cir.1986) (applying third party exception in extortion case). The record in this case shows that the defendant joined an expansive cocaine distribution network. This conspiratorial network involved a large cast of characters far beyond that strictly necessary to his aiding and abetting the Travel Act violations and possession with intent committed by Ernest Lonzo and Charles Cole as true principals.[6] Thus, the "third party" exception defeats any application of Wharton's Rule. *But see, United States v. Hunter,* 478 F.2d 1019, 1024–26 (7th Cir.) (Stevens, J.), *cert. denied,* 414 U.S. 857, 94 S.Ct. 162, 38 L.Ed.2d 107 (1973) (implicitly rejected in *Iannelli* dicta).

■ Second, the court holds that Wharton's Rule is inapplicable where the harm from the conspiracy at issue ranges far beyond the immediate event or substantially affects persons who do not participate as necessary actors. Traditionally, the rule should not apply unless "the immediate consequences of the crime rest on the parties themselves rather than on society at large." *Iannelli,* 420 U.S. at 782–83, 95 S.Ct. at 1292–93.[7] Nor should Wharton's Rule apply if the conspiracy at issue will likely "produce agreements to engage in a more general pattern of criminal conduct," *Iannelli,* 420 U.S. at 783–84, 95 S.Ct. at 1292–93, such that it is actually more dangerous than the agreement inherent in the substantive offense. Where the conspiracy is more dangerous than the substantive offense, the rationale for Wharton's Rule evaporates, and the court will not presume that Congress intended the crimes to merge.

The Travel Act and possession offenses at issue here implicate grave harms to society. At a time when this nation is struggling with the horrific consequences of cocaine traffic,[8] this court cannot possibly conclude that "the immediate consequences of the crime rest on the parties themselves rather than on society at large."[9] Nor can the court conclude that this conspiracy would not result in subsequent agreements to commit criminal activity. Rather, the court concludes that two types of subsequent agreements from such conspiracies are likely. First, and most obviously, this conspiracy necessarily contemplates fostering numerous purchase and sale agree-

---

**6.** The indictment charged more than thirty persons with membership in the conspiracy.

**7.** In at least one reported case in this circuit, a district court rejected a Wharton's Rule argument because the harm or risk at issue worked immediately against society rather than against the perpetrators. *Brown,* 521 F.Supp. at 519 ("most immediate consequence of the making of false statements in matters within the jurisdiction of the United States [18 U.S.C. § 1001], presumably, is the defrauding of the government and society at large").

**8.** Take cocaine babies, for one example:

Some suffer strokes in the womb. Others are born with a birth weight of as little as a pound and a half. Some are unable to stop kicking and moving their arms. Many have skin so sensitive that they cannot be touched or held by anyone. Their high-pitched cries distinguish them from healthier, more fortunate babies....

Suzanne M. Miller, *Youngest Victims Of Drug Epidemic Need Help,* L.A. TIMES, October 15, 1991, at B9 (estimating there are "375,000 babies exposed each year to illegal drugs"). Closer to home and to the facts of this case, "At least 10,000 Illinois children born with cocaine in their systems are now reaching grade school age." Jean Latz Griffin & Teresa Walsh, *Schools' Newest Burden: Cocaine Babies,* CHIC. TRIB., December 1, 1991, at 1 (discussing burdens on schools).

**9.** Given that even the smallest sale and purchase of drugs ultimately serves to line the pockets of major drug dealers, this court wonders whether Wharton's rule should have *any* application to drug crimes. *But see* LaFAVE & SCOTT, 2 SUBSTANTIVE CRIMINAL LAW § 6.5(g)(4) at 119 (1986).

ments to distribute the cocaine. Second, such conspiracies as this represent a lucrative underground business arrangement, which, if successful, logically lead to further and bigger transactions in pursuit of further and bigger profits. This is nothing like the threat posed by transitory passions in such classic cases as dueling and adultery. Thus, Wharton's Rule is also inapposite under the limited harm prerequisite recognized in cases like *Iannelli*.[10]

◼ Turning from Wharton's Rule back to straightforward double jeopardy analysis, the court next examines the defendant's claim that the two Travel Act convictions (counts two and three) are multiplicitous. The court is troubled by the government's decision to fracture this drug run into two Travel Act components, but concludes that no law stands in the way of either the government's charging decision or Judge Kanne's determination that consecutive sentences should apply.

The Ninth Circuit appears to have been the first appellate court to address the proper unit of prosecution under the Travel Act. *United States v. Polizzi*, 500 F.2d 856, 898–99 (9th Cir.1974), *cert. denied*, 419 U.S. 1120, 95 S.Ct. 802, 803, 42 L.Ed.2d 820 (1975). That court held, "In view of the plain import of the language of section 1952, the absence of any contrary indication in the legislative history, and the construction given comparable statutes over the years, we conclude that each act of travel may be treated as a separate violation of section 1952." *Id.* at 899. The *Polizzi* court reasoned persuasively that individual acts of travel, even toward a common purpose, are the very harms that § 1952 seeks to address, and not merely jurisdictional elements.

Congress may well have concluded there was a separate social interest in deterring each act of travel in furtherance of an illegal enterprise: each successive trip may increase the success of the illegal activity, and a decision not to make a given trip for fear of additional

penal consequences could therefore limit the harm to society 1952 is intended to prevent.

*Id.* at 898 n. 7.

The Sixth Circuit and Seventh Circuit have both cited the relevant portion of *Polizzi*. In *United States v. Jabara*, 644 F.2d 574 (6th Cir.1981), the Sixth Circuit held, "Under the Travel Act, each act of interstate travel and each use of an interstate facility constitutes a punishable offense." *Id.* at 577–78 (quoting *United States v. Alsobrook*, 620 F.2d 139, 142 (6th Cir.), *cert. denied*, 449 U.S. 843, 101 S.Ct. 124, 66 L.Ed.2d 51 (1980), citing *Polizzi*). In *United States v. Raineri*, 670 F.2d 702 (7th Cir.), *cert. denied*, 459 U.S. 1035, 103 S.Ct. 446, 74 L.Ed.2d 601 (1982), the Seventh Circuit stated in dicta, "Under the Travel Act, each act of interstate travel and each interstate use may constitute a separate offense." *Id.* at 715 n. 9 (aiding and abetting case citing *Alsobrook* and *Polizzi*).

This court concludes that the *Polizzi* holding should control here. The first act of travel immediately facilitated one harm: a major drug sale among dealers in Florida, with the ultimate purpose of distribution in the midwest. The second act of travel facilitated a subsequent harm: holding a large amount of cocaine in Indiana for distribution to those unwise and unfortunate enough to buy it for consumption. If the mules in this case had abandoned their plan and their cocaine in Florida, then the second harm would never have occurred. The court concludes that, in the Travel Act, Congress has properly enabled the executive and judicial branches to separately punish and thereby separately deter each of these harms.

Thus, there is no double jeopardy violation in the convictions or consecutive sentences at issue. Nor is there a violation of Wharton's Rule.

### III. CONCLUSION

For the reasons discussed above, this court holds that the conviction and sen-

---

**10.** Of course, this is a matter of degree. Even the classic cases of adultery and dueling may be characterized as affecting society. But, in this court's view, drug distribution conspiracies plainly fall near the worst end of the spectrum of criminal dangers to society.

tence imposed by Judge Kanne were proper. Motion DENIED. The clerk of court shall close the civil action maintained for administrative purposes with reference to this motion.

SO ORDERED.