John Herman **ROCKROHR**, Jr., and Bank One, Plaintiffs,

v.

**NORFOLK SOUTHERN CORP.** and Southern Railway Co., Defendants.

No. H 90–237.

United States District Court, N.D. Indiana, Hammond Division.

June 18, 1992.

Lloyd P. Mullen (Richard A. Mayer, on brief), Spangler, Jennings and Dougherty, Merrillville, Ind., for plaintiffs.

John C. Duffey and Russell H. Hart, Stuart and Branigin, Lafayette, Ind. (F. Wesley Bowers, on brief), Bowers, Harrison, Kent & Miller, Evansville, Ind., for defendants.

## MEMORANDUM OPINION AND ORDER

MOODY, District Judge.

This matter is before the court on the plaintiffs' untimely "Motion to Strike Defendants' Non–Party Defense," filed with leave of court after the final pretrial conference. The defendants responded, and the plaintiffs replied.

## I. BACKGROUND

■ On June 13, 1988, one Joan J. Pritt ("Pritt") drove a car in which plaintiff John Herman Rockrohr, Jr. ("Rockrohr") rode as a passenger. The car collided with a train at a railway crossing. This is a tort case arising from that collision. Rockrohr and his guardian, Bank One, allege that the railway entity defendants caused the collision through "wanton, willful, negligent and careless misconduct." Complaint ¶ 6. They seek both compensatory and punitive damages, invoking Indiana tort law under this court's diversity jurisdiction. 28 U.S.C. § 1332. The plaintiffs have previously settled with Pritt and her insurer, having entered a covenant not to sue them and having further voluntarily dismissed a state court claim against them with prejudice.[1]

The fourth affirmative defense listed in the defendants' answer states: "The fault for the incident alleged in the complaint was caused [sic] fully or at least in part by Pritt, a non-party." This affirmative defense invokes the Indiana Comparative Fault Act ("CFA"), IND.CODE § 34–4–33–1, et seq., which provides that the fact-finder should allocate fault to nonparties. IND.CODE § 34–4–33–5. The CFA defines a nonparty at IND.CODE § 34–4–33–2(a):

"Nonparty" means a person who is, or may be, liable to the claimant in part or in whole for the damages claimed but who has not been joined in the action as a defendant by the claimant. A nonparty shall not include the employer of the claimant.

The plaintiffs now move to strike the fourth affirmative defense, arguing that Pritt is not a nonparty to whom the jury may allocate fault under the CFA. More specifically, the plaintiffs argue that the existence of a covenant not to sue between the plaintiffs and Pritt shows that she is not now and may not become liable for the damages claimed in this action.

■ This motion presents an interesting and tricky issue of Indiana law. The court must decide whether a plaintiff who settles with one or more joint tort-feasors may subsequently employ that settlement to bar remaining tort-feasors from asserting the nonparty affirmative defense afforded by the CFA. The parties have not cited any case directly on point, nor is the court aware of one after its own research.

1. The dismissal with prejudice is argued for the first time in the reply brief, provoking the defendants to seek further briefing.

The defendants have a point. Reply briefs are generally an improper vehicle for presenting new arguments, and should be confined to the issues raised in the opening motion or brief. See, e.g., Egert v. Connecticut General Life Ins. Co., 900 F.2d 1032, 1035 (7th Cir.1990); Zambrana v. United States, 790 F.Supp. 838, 843 (N.D.Ind.1992); Weiss v. Coca–Cola Bottling Co. of Chicago, 1992 WL 48018 at *2 (N.D.Ill. Mar. 3, 1992) (No. 91 C 1475).

But in this case, the new line of argument is not materially different from the opening brief. The new element bears only on the defendants'

unpromising theory that a covenant not to sue is uncertain, and should not be taken to preclude liability. But a covenant not to sue is nothing more nor less than a point on the continuum of events that may preclude liability. It falls somewhere between an oral agreement to settle a case and a final judgment pending appeal. No point on the continuum is ever truly final; even after direct appeal there remain various procedures for collaterally attacking a judgment. The distinction between a covenant not to sue and a dismissal with prejudice should not be determinative, especially where, as here, the dismissal occurred in another forum and the dismissed party was never a litigant before this court.

## II. ANALYSIS

■ Initially, the court notes that the motion should have been made within twenty days of the answer under Federal Rule of Civil Procedure 12(f). Further, motions to strike an insufficient defense under Rule 12(f) are generally disfavored. *Farmers & Merchants State Bank v. Norfolk & Western Ry. Co.,* 673 F.Supp. 946, 947 (N.D.Ind. 1987). However, they may be useful for addressing legal questions when prejudice to the movant is at issue. *See id.* As the question here is primarily legal in nature, and as it may substantially impact any recovery by the moving plaintiffs, the court will address the motion on the merits pursuant to its power under Rule 12(f) to proceed on its own initiative at any time. *See Cornell Harbison Excavating, Inc. v. May,* 546 N.E.2d 1186, 1187 (Ind.1989) (motion to strike proper Indiana procedure to challenge nonparty affirmative defense).

In *Huber v. Henley,* 656 F.Supp. 508 (S.D.Ind.1987), Judge Barker relied on a cogent analysis of the CFA's purpose.

> First, the provisions of Indiana's Comparative Fault Act signal a legislative policy favoring the principle of fair allocation among all tortfeasors. In most instances, the legislature gave this principle preeminence over the objective of fully compensating plaintiffs. In return for the removal of the contributory negligence bar to recovery, plaintiffs lost the ability to recover the full measure of damages from any one joint tortfeasor. With this abolition of joint and several liability, the legislature favored strict apportionment of fault and left the burden of damages attributable to insolvent tortfeasors, inadvertently omitted tortfeasors, intentionally omitted tortfeasors, and jurisdictionally unavailable tortfeasors on plaintiffs. Any interpretation of legislative intent must therefore be made with a cognizance of this policy. . . .

*Id.* at 511. *But see Bowles v. Tatom,* 546 N.E.2d 1188, 1190 n. 1 (Ind.1989) (noting

that CFA does not expressly abolish joint and several liability, nor does any amending legislation, or any decision of the Indiana Supreme Court). Judge Barker went on to hold that an Indiana governmental entity would retain nonparty status even though it had become immune from suit by virtue of the plaintiff's failure to file a timely notice of tort claim under the Indiana Tort Claims Act ("ITA"), IND. CODE § 34-4-16.5-1, *et seq.*[2] She reasoned that the immunity at issue was not a "traditional immunity" such as absolute judicial immunity, which prevents an action from even accruing. Rather, it was an immunity arising after accrual of a generally recognized right to recover. Distinguishing these types of immunity with reference to the purpose of the CFA, Judge Barker held that the CFA definition of nonparties could reasonably be interpreted to reach "one against whom the plaintiff *would have had* a right to relief." *Huber,* 656 F.Supp. at 511 (emphasis added). In a subsequent opinion in the same case, Judge Barker emphasized the importance of the nature of the right to relief and its relation to the time a cause of action accrued.

> The court cautions the defendants not to read its earlier holding so expansively. The entry of March 20, 1987, held that the state could be a nonparty because the plaintiff would have had a right to relief had the prescribed tort claims notice been properly given. However, the statute of repose, had it applied, would have barred the plaintiff's cause of action at the instant of its accrual. The state would not have been "a person who is, or may be, liable" to the plaintiff. The plaintiff would not have forfeited his right to recovery (as he did by not giving tort claims notice within 180 days); he simply would have had no right.

*Huber v. Henley,* 669 F.Supp. 1474, 1479 (S.D.Ind.1987). While cautioning against going too far, Judge Barker thus reads the definition of nonparties broadly, and the

---

**2.** IND.CODE § 34-4-33-8 provides that the CFA "does not apply in any manner to tort claims against governmental entities or public employees under" the ITA. Judge Barker construed the

word "claims" in § 34-4-33-8 such that the statute would "not preclude the identification of a government entity as a nonparty." *Huber,* 656 F.Supp. at 511 n. 1.

liability-based exception to nonparty status narrowly.[3]

In *Hill v. Metropolitan Trucking, Inc.,* 659 F.Supp. 430 (N.D.Ind.1987), however, Judge Miller reached precisely the opposite conclusion in a case decided without reference to *Huber.*[4] Judge Miller held, in the alternative and without extended discussion, that failure to give notice under the ITA did create an immunity precluding nonparty status for state employees under the CFA. *Id.* at 434–35.[5] This holding reads the definition of nonparties strictly, and the liability-based exception to nonparty status broadly.[6]

There is support for Judge Miller's reading on the face of the statute and in its history. As Judge Barker acknowledged in *Huber,* the present definition of nonparty in the CFA is designed to limit the availability of the nonparty affirmative defense, and to expand the ability of plaintiffs to recover.

> This definition of "nonparty" was added as an amendment to the Act in 1984. As originally enacted, the Act called for the jury to attribute fault not only to the plaintiff and defendant, but to "any person who is not a party to the litigation." Ind.Code § 34–4–33–5(b)(1) (Supp.1983) (amended 1984). This provision shifted the entire burden of unrecoverability (with the abolition of joint and several liability) to the plaintiff. For example, if a jury attributed fault to a person who was immune from suit, the plaintiff simply could not recover the percentage of damages so attributed. The 1984 amendment ameliorated this result somewhat by specifying that a nonparty to whom a jury may attribute fault must be a "person who is, or may be liable to the claimant." A tortfeasor, then, who enjoys a

traditional immunity from suit is not a "person who is or may be liable to the claimant" and cannot, therefore, be a nonparty. *See generally* Eilbacher, *Comparative Fault and the Nonparty Tortfeasor,* 17 Ind.L.Rev. 903, 916 (1984).

*Huber,* 656 F.Supp. at 510. Given this purpose for the specific definition in § 34–4–33–2(a), one may reasonably conclude that the legislature intended it to work a substantial change in the general "legislative policy favoring the principle of fair allocation among all tortfeasors" under the CFA. *Id.* at 511. On the other hand, one may well wonder whether this liability-based exception to nonparty status, designed to boost plaintiffs caught short by the immunity of their tort-feasors, should be limited so that it does not swallow the general rule of nonparty fault allocation contemplated by the CFA.

Of course, Judge Barker, Judge Miller, and this court are ultimately trying to predict the actions of the Indiana Supreme Court. *Collins Co., Ltd. v. Carboline Co.,* 837 F.2d 299, 301 (7th Cir.1988) ("As a federal court sitting in diversity jurisdiction, this Court must accord substantial deference to [the district court's] interpretation of Illinois law as well as try to predict how the Illinois Supreme Court would resolve the case."); *Green v. J.C. Penney Auto Ins. Co., Inc.,* 806 F.2d 759, 761 (7th Cir.1986) (noting that lower state court opinions are useful but not binding on federal court predicting state law); *Gray v. Chacon,* 684 F.Supp. 1481, 1483 (S.D.Ind.1988) (holding federal courts may anticipate changes in state law). The relevant precedent from that court includes *Bowles v. Tatom,* 546 N.E.2d 1188 (Ind. 1989).

---

**3.** *Huber* is cited with approval in *Handrow v. Cox,* 553 N.E.2d 852 (Ind.App.1990), *vacated on other grounds,* 575 N.E.2d 611 (Ind.1991).

**4.** Judge Barker had decided *Huber* only three days before, so Judge Miller did not have the benefit of her analysis in the reports.

**5.** The primary holding in this part of *Hill,* however, was that the purported nonparties were immune from the time the action accrued be-

cause plaintiffs were in the same employ and the "workers' compensation laws would provide their exclusive remedy." *Hill,* 659 F.Supp. at 434.

**6.** Judge Miller also read the employer exclusion broadly to reach those "in the same employ," critiquing the effect of this broad reading, but concluding that the plain language of the statute required it. *Hill,* 659 F.Supp. at 433–34.

In *Bowles,* the trial court conducted a bench trial, dismissed certain alleged joint tort-feasors at the conclusion of the plaintiff's case upon finding no evidence of their liability, and determined that defendant Bowles was 100% at fault. The Court of Appeals held that the trial court should have apportioned fault among the dismissed defendants "even though they had been dismissed and even though Bowles did not plead a nonparty defense." *Id.* at 1189. The supreme court, however, granted transfer to determine whether the CFA "requires that parties dismissed at the close of the plaintiff's case remain as nonparty defendants for the purpose of final determination of fault."

The supreme court in *Bowles* held that the trial court properly declined to apportion fault among the dismissed defendants. It held that the remaining defendant (Bowles) could not assert a nonparty defense against the dismissed defendants because those defendants had once been joined as parties under IND.CODE § 34–4–33–2(a). The court recognized that this holding created an "apparent dilemma" for defendant Bowles by depriving him of "the opportunity to attribute all or part of the fault to others." *Bowles,* 546 N.E.2d at 1190. But the court concluded that there was no real dilemma. Initially, the court noted that Bowles had the burden of proof under the CFA as to a nonparty defense. Given this burden of proof, reasoned the court, Bowles should have objected to the dismissal of the other defendants: "[F]ailure to timely present such an objection waives the defense as to the dismissed party." *Id.* at 1190. Had he done so, then the trial court would have been bound to keep the dismissed defendants in the suit, and he could have presented his nonparty defense attributing fault to them.

In cases where motions at the conclusion of the plaintiff's evidence threaten to remove a party that a remaining defendant claims should remain a party or nonparty for purposes of allocation of fault, such remaining defendant may and should oppose the motion or request that any ruling be delayed until the remaining defendant has an opportunity to present his evidence. In such event, the nature and purpose of the Indiana Comparative Fault Act, together with the efficient administration of justice, would normally result in a trial court's refusal to prematurely dismiss and discharge such parties.

*Bowles,* 546 N.E.2d at 1190.

But this makes little sense on a strict view of the joinder exclusion in the nonparty definition. Once the defendants at issue had become parties, there was, by definition, no nonparty affirmative defense as to them. What was it Bowles was supposed to assert in objecting? There is no contribution among joint tort-feasors under the CFA. IND.CODE § 34–4–33–5; *Justice v. CSX Transp., Inc.,* 908 F.2d 119, 125 (7th Cir.1990). Nor is there any common law right to indemnification arising from the fault allocation process of the CFA. *Indianapolis Power & Light Co. v. Brad Snodgrass, Inc.,* 578 N.E.2d 669, 672–73 (Ind. 1991). *But see Allied Signal, Inc. v. Acme Service Corp.,* 946 F.2d 1295, 1296–97 (7th Cir.1991) (CFA does not destroy contractual indemnification rights). There appears to be no straightforward way in which Bowles and the trial court could have kept the dismissed defendants in the suit long enough for Bowles' evidence to come out, despite the supreme court's conclusion that this is what Bowles should have accomplished.

The *Bowles* court essentially relied on "the nature and purpose of the Indiana Comparative Fault Act, together with the efficient administration of justice" to read the definition of nonparty broadly. Specifically, the court solved the "apparent dilemma" by holding that Bowles could maintain a nonparty affirmative defense against a party to the suit, even though both an intuitive understanding of "nonparty" and a strict reading of § 34–4–33–2(a) indicate that a CFA nonparty defense should *not* apply with reference to a current or former party to the action. It was the waiver of this defense, rather than any inherent defect in it, that caused Bowles to lose in the supreme court.

But *Bowles* also indicated that the definition of nonparty in the CFA should be read narrowly. It noted that with the 1984 amendment "the legislature significantly narrowed its definition of the class of persons to whom fault could be allocated." *Bowles*, 546 N.E.2d at 1190.[7] The court further gave a general analysis of the purpose of the CFA, concluding that accurate fault allocation was a secondary intent of the legislature.

Furthermore, the nature of and procedures established by the Indiana Comparative Fault Act reveal that its primary function is to modify the common law rule of contributory negligence under which a plaintiff only slightly negligent was precluded from recovery of any damages, even as against a relatively highly culpable tortfeasor. In abrogating this harsh rule, the Act allows recovery but reduces such recovery in proportion to any fault of the plaintiff which contributed to the damages. The contributory negligence defense is partially retained as the Act also generally precludes any recovery to a plaintiff with more than 50 percent fault. In furtherance of these objectives, the Act establishes a mechanism by which the factfinder is required to specifically determine the relative degree of the plaintiff's fault with respect to others. This proportional allocation of fault is the means by which the Act's objectives are reached, not the ends to which it aspires.

*Id.* at 1190.

This court is left with conflicting signals from *Bowles*. On one hand, the *Bowles* court defined nonparty broadly so as to effect the CFA's purpose of accurately attributing fault and to further efficiency. On the other hand, it would read nonparty narrowly because the legislature intended to protect plaintiffs by artificially limiting the persons to whom the fact-finder may attribute fault, and because accurate fault

attribution is not the primary goal of the CFA. Further, the present case is distinct from *Bowles* in that the argument before this court focuses on the potential liability aspect of the nonparty definition, rather than on past joinder. Had Bowles made the proper objection, the other defendants would not have been dismissed and would have remained subject to liability. It is difficult to discern whether the Indiana Supreme Court would analyze the liability-based exclusion as loosely as it read the joinder-based exclusion in *Bowles*.

Ultimately, this court concludes that *Bowles* weighs more heavily for the defendants in the present dispute. The practical core of *Bowles*, its everyday meaning for practitioners, is a rule allowing defendants to maintain a nonparty defense as to persons who would otherwise be dismissed. This rule logically extends not only to defendants who would be dismissed at the close of the plaintiff's evidence, but also to defendants who would be voluntarily dismissed pursuant to a settlement. *See State Farm Mut. Auto. Ins. Co. v. Wilkinson*, 548 N.E.2d 835, 837 n. 2 (Ind.App. 1990) (holding that defendants waived nonparty defense as to settling, dismissed co-defendant). If such defendants are properly subject to nonparty apportionment, then it makes little sense to distinguish the closely related class of persons who settle before becoming defendants.

But in *Snodgrass* the supreme court again indicated a predilection for a narrow reading of the nonparty defense in derogation of accurate fault apportionment. There, the supreme court held that certain defendants could not claim indemnification from the plaintiff's employer, who was plainly excluded from the definition of a nonparty. 578 N.E.2d at 672. The court quoted *Bowles* in support, reasoning in part that "[t]he primary objective of the Act is not to achieve proportional liability but to modify the harsh common law rule

---

7. The *Bowles* opinion discusses the 1984 amendment to the CFA, noting that "the phrase 'a party or nonparties' was substituted for the phrase 'persons who are not parties to the action' at the end of" IND.CODE § 34–4–33–5(a)(1) and (b)(1). This is a mistake apparently arising

from an erroneous historical note to IND.CODE ANN. § 34–4–33–5 (West 1983 & Supp.), which misquotes § 3 of 1984 Ind. Acts 174. The amendment, as reflected in the present text of § 34–4–33–5, actually substituted "nonparty or nonparties" for the original language.

of contributory negligence." *Id.* In the case of employers, however, the legislature expressed in unequivocal language a specific exclusion from the definition of nonparties, which it plainly designed to account for the complex effect of workers' compensation laws. *See Hill,* 659 F.Supp. at 433–34. It is less obvious that the "is or may be liable" exclusion from the nonparty definition was designed to place run-of-the-mill settling tort-feasors beyond the reach of CFA fault allocation.

*Cornell Harbison* also weighs in for a narrow interpretation of the defense. This time the supreme court focused on the liability-based exclusion from nonparty status. The case holds only that a nonparty must be named. But the court concurred with and quoted the court of appeals reasoning that "a culpable nonparty cannot be assigned fault unless the nonparty is subject to civil liability in some forum." 546 N.E.2d at 1187 (quoting *Cornell Harbison Excavating, Inc. v. May,* 530 N.E.2d 771, 773 (Ind.App.1988)). The court further adopted the more obvious reasoning that IND.CODE § 34–4–33–6 expressly requires that nonparties be named. In *Rauck v. Hawn,* 564 N.E.2d 334, 338–39 (Ind.App. 1990), however, the court of appeals quoted and applied the "subject to civil liability" analysis from *Cornell Harbison,* holding that a co-defendant dismissed on summary judgment failed to qualify as a proper nonparty.

There is some supreme court authority supporting the importance of accurate fault apportionment in the CFA. In *Gray,* Judge Barker correctly predicted that the CFA would lead to the abrogation of Indiana's troublesome and much-criticized release rule. *See Huffman v. Monroe County Community School Corp.,* 588 N.E.2d 1264, 1266 (Ind.1992). Her opinion in *Gray* relied on the CFA's policy of apportioning fault to show that the release rule was no longer justified either by fears of excessive recoveries [8] or by the single entity theory of joint tort-feasance. The Indiana Supreme Court adopted the same reasoning in *Huffman:* "By prohibiting a verdict which compensates for more than one hundred per cent of the damages sustained by a claimant, the possibility of a plaintiff being unjustly enriched by receiving more than complete satisfaction for an injury has been eliminated." *Huffman,* 588 N.E.2d at 1266. *Huffman,* therefore, shows that fault apportionment is a central and important policy of the CFA with a broad reach in Indiana's law of torts—even if *Bowles* and *Snodgrass* are correct in concluding that the legislature looked to apportionment primarily as a means to its end of eliminating the old contributory negligence doctrine.

In addressing the present motion, this court must, especially in light of *Cornell Harbison,* give careful attention to the plaintiffs' argument that the plain words of § 34–3–33–2(a) require that no person may qualify as a nonparty unless that person is subject to the judgment of a court. If that is the case, then this court is bound to consider giving effect to those words even if they produce ill effects on the CFA tort scheme. "If the plain language of the statute is clear, courts are not to look beyond the statute's words to interpret the statute." *Hill,* 659 F.Supp. at 43 (citing *Ernst v. Hochfelder,* 425 U.S. 185, 201, 96 S.Ct. 1375, 1384–85, 47 L.Ed.2d 668 (1976); *Kelly v. Wauconda Park District,* 801 F.2d 269, 270 (7th Cir.1986)). But this rule of statutory interpretation is not absolute. Like most good law, it is flexible enough to accommodate the inevitable hard case. As then-Justice Rehnquist has explained:

---

**8.** The court notes that *Wilkinson,* may tend to undercut this conclusion insofar as it holds under mootness doctrine that parties may not first settle and then proceed to obtain a judgment apportioning fault. If releases must necessarily precede litigation, then CFA apportionment might not, as a practical matter, truly reduce the risk of excessive recoveries. Assuming that the CFA does indeed eliminate joint and several liability, however, the *Gray* analysis remains compelling in reasoning that "no rational defendant will have any incentive whatsoever to seek a release from the plaintiff by tendering a sum greater than that defendant would reasonably calculate as being her proportionate share of the plaintiff's total damages." *Gray,* 684 F.Supp. at 1485.

[I]n rare cases the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters, and those intentions must be controlling. We have reserved "some 'scope for adopting a restricted rather than a literal or usual meaning of its words where acceptance of that meaning . . . would thwart the obvious purpose of the statute.'" *Commissioner v. Brown*, 380 U.S. 563, 571, 85 S.Ct. 1162, 1166, 14 L.Ed.2d 75 (1965) (quoting *Helvering v. Hammel*, 311 U.S. 504, 510–511, 61 S.Ct. 368, 371–72, 85 L.Ed. 303 (1941)).

*Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982). This is such a case.

The statute defines a nonparty as "a person who is, or may be, liable to the claimant in part or in whole for the damages claimed." The ordinary meaning of "liable" is "obligated in law or equity," WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 687 (1986); BLACK'S LAW DICTIONARY 915 (6th ed. 1990), and one who settles moots the immediate legal claim against him. *E.g. State Farm Mut. Auto. Ins. Co. v. Wilkinson*, 548 N.E.2d 835 (Ind.App.1990) (settling moots claims under CFA). Thus, the plaintiffs reasonably argue that settlement with a joint tort-feasor excludes that tort-feasor from the nonparty fault apportionment process. But the Indiana legislature would not have intended anything like this result.

*Huffman* illustrates the proposition that apportioning fault under the CFA has significant and salutary effects on the Indiana tort system. And this is, obviously, the reason why the legislature adopted comparative fault as its particular means of overthrowing the contributory negligence regime. In construing and applying the statutory nonparty defense, this court looks to the structure and purposes of the CFA, and attempts to do minimal violence to the apportionment principle. But striking the fourth affirmative defense in this case would create the following rule of Indiana law: A plaintiff who settles with one or more joint tort-feasors may subsequently employ that settlement to bar remaining tort-feasors from asserting the nonparty affirmative defense afforded by the CFA. Such a rule would counter an important purpose and the animating process of the CFA by preventing the trier of fact from accurately apportioning fault among tort-feasors who were amenable to suit when the action arose. Moreover, and more alarmingly, such a rule would inevitably lead to manipulation by plaintiffs, who could first settle with judgment-proof tort-feasors who are primarily or completely responsible for a tort, and then proceed against a remaining deep pocket, ultimately focusing the jury's attention on that deep pocket as if the other tort-feasors did not exist.[9]

The legislature would not have intended this rule. Nor would the *Huffman* court, concerned with unjust enrichment. Nor would the *Bowles* court, concerned with "the nature and purpose of the [CFA], together with the efficient administration of justice." Such a rule would move Indiana law from the unworkable anti-plaintiff release rule—abandoned in *Huffman* only two months ago—to a new and just as unworkable anti-defendant release rule under the CFA.

*Huber* correctly held that the CFA definition of nonparties could reasonably be interpreted to reach "one against whom the plaintiff *would have had* a right to relief." *Huber*, 656 F.Supp. at 511 (emphasis added). Where, as here, a general right to sue immediately accrues with the tort, a subsequent settlement quashing that right to sue

---

9. Evidence of the other tort-feasors' acts would be admissible. *Moore v. General Motors Corp., Delco Remy Div.*, 684 F.Supp. 220 (S.D.Ind.1988) (evidence of conduct admissible even if actor not a proper non-party); *Kveton v. Siade*, 562 N.E.2d 461, 464 (Ind.App.1990), *trans. denied*, Feb. 7, 1992 (same). Further, the amount of settlements would probably be subject to a set off against the judgment. *Cf. Sanders v. Cole Mun. Finance*, 489 N.E.2d 117 (Ind.App.1986) (trial court properly reduced damages award by amount previously received by worker from joint tort-feasors for covenants not to sue). But this is all cold comfort for defendants litigating liability when the jury is ultimately instructed to apportion fault without reference to the settling tort-feasors.

will not prevent joint tort-feasors from attempting to apportion fault to the settling person as a nonparty.

### III. CONCLUSION

The court holds that defendants under the Indiana Comparative Fault Act may assert an affirmative nonparty defense as to persons with whom a plaintiff settles. Accordingly, the court DENIES the motion. The defendants may proceed with their fourth affirmative defense.

SO ORDERED.